CASE 53—PETITION EQUITY—MARCH 15.

# Bryan, &c., v. Board of Education of the Kentucky Annual Conference of the Methodist Episcopal Church South.

APPEAL FROM BOURBON CIRCUIT COURT.

1. CONSTITUTIONAL LAW—ACT AUTHORIZING REMOVAL OF COLLEGE.— The stockholders in an institution of learning, incorporated under the name of the Millersburg Male and Female Collegiate Institute, having entered into a contract with the Board of Education of the

Kentucky Conference of the Methodist Episcopal Church South, by which they agreed to surrender their stock in said institute in consideration of scholarships to be issued to them in a college in which the institute was to be merged, and which was to be under the control of the Conference, it can not be implied as a part of their contract that said college was to be forever conducted at the town of Millersburg, where the institute was then located, and, therefore, the Legislature had the power to pass an act authorizing the Board of Education, which was incorporated under that name, to remove the seat of the college from Millersburg to any other place in the bounds of the Kentucky Conference, as said act did not impair the obligation of any contract.

2. SAME.—Mention made in an act of the Legislature and also in the scholarships of the college being established in Millersburg, does not import an agreement it shall permanently remain there, but should be interpreted as merely descriptive of the institution.

3. DECLARATORY STATUTE.—An act of the Legislature providing that nothing in a former act incorporating the Board of Education should be construed to prevent said board from removing the seat of their college from Millersburg is to be regarded as conferring the power to remove.

4. A STATUTE DECLARATORY OF THE MEANING OF A FORMER STATUTE will be regarded as establishing a rule of conduct for the future if such appears to have been the intention of the Legislature.

5. RESERVATION OF POWER TO AMEND STATUTE.—As the act incorporating the Board of Education was designed merely to carry out the contract previously made between the board and the stockholders of the Millersburg Institute, the reservation in that act of the power to amend at pleasure did not give the Legislature the right to amend to the prejudice of rights which had vested under the contract prior to the passage of the original act.

6. TITLE OF ACT INSUFFICIENT.—So much of an act, entitled "An act to incorporate the Board of Education of the Kentucky Annual Conference ,of the Methodist Episcopal Church South," as repeals the charter of the Millersburg Male and Female Collegiate Institute is unconstitutional, as the subject is not expressed in the title.

HARGIS & EASTIN FOR APPELLANTS.

1. There is nothing to support the claim made by appellees upon the ground of adverse possession and lapse of time. Adverse possession for the purpose of a hostile claim is entirely different from exclusive possession amicably obtained by trustees who take a necessary possession in order to discharge their duties. A trustee's possession is like that of tenants in common—neither can claim exclusive possession adverse to the other without an unequivocal renunciation of the

relation being made; and no renunciation will be implied from any act not equivalent in force to an express renunciation, and which has not been unequivocally communicated to the *cestui que trust.* (Sedgwick and Waite on Trial of Title to Land, secs. 750–1; Catlin v. Decker, 38 Conn., p. 262; Perry on Trusts, secs. 863, 864, 745.)

The possession of the trustee, although the title is in his *individual name,* is nevertheless the possession of the beneficiaries or *cestuis que trust* until unequivocally and openly renounced by the trustee. (Butler v. Lawson, 72 Mo., 227; Norris Appeal, 71 Pa. St., 106; Pascal v. Hinder, 28 Ohio, 568.)

2. The Conference and its Board of Education made a valid contract with the donors and founders of the college, and the obligation of this contract can not be impaired by legislation or the acts of any of the parties to it. (Hascall v. The Madison University, &c., 8 Barb., 184; Chambers v. Baptist Education Society, 1 B. M., 221.)

The words " to locate permanently " mean substantially the same as the words " to be established."

3. The act of the Legislature of January 12, 1860, incorporating the Board of Education, and the amendment thereto of September 17, 1861, are both unconstitutional. Both of these acts violated the contract made with the stockholders and founders of the college. Besides, each of these acts refers to more than one subject, and the title of neither of the acts is sufficiently comprehensive.

The second section of the act of September 17, 1861, is unconstitutional, because it attempts to usurp the functions of the judiciary. (Cooley on Const. Limit., p. 111.)

4. Under the reserved right to amend or repeal the charter of any corporation (Gen. Stats., chap. 68, sec., 8) the Legislature can not interfere with the title or enjoyment of property; it can only repeal the franchise and privilege of the corporation. (City of Covington v. Cov. & Cin. Bridge Co., 10 Bush, 76; Cumberland & Ohio R. Co. v. Barren County Court, 10 Bush, 609; Sage v. Dillard, 15 B. M., 340; Cumberland & Ohio R. Co. v. Judge of Washington County Court, 10 Bush, 573; Griffin v. Ins. Co., 3 Bush; Allen v. McKean, 1 Sumner.)

As to what is a franchise and a privilege in the sense of the act reserving the power to amend charters, see Commonwealth v. City of Frankfort, 13 Bush, 189; 2 Sharswood's Blackstone, 37; 3 Kent, 458; Bouvier's Law Dict., 611; People v. Utica Ins. Co., 15 John., 387; Bank of Augusta v. Earle, 13 Pet., 595; Sage v. Dillard, 15 B. M., 355; St. Mary's Church, 7 Serg. & Rawle, 562.

5. The courts will apply new statutes only to future cases when it can possibly be done. (10 Bush, 574; Potter's Dwarris, 162; Cooley's Con. Lim., p. 370.)

The act of September 17, 1861, does not say that the removal of

Bryan, &c., v. Board of Education Ky. Annual Conference M. E. C., South.

the college can be made against the consent of the stockholders and donors who parted with their money before its passage, and the court will not attempt to so apply it, for that would be making the act apply to rights and privileges vested prior to its passage.

6. The knowledge of an act being in existence is not sufficient to consti- tute an acceptance thereof by the grantees. (Morawetz on Corpora- tions, sec. 14.)

A charter can be accepted only by those to whom it is offered. (Morawetz on Corporations, sec. 15.) The act of January 12, 1860, and the act of September, 1861, were never offered for acceptance to any stockholder or donor to this college or its endowment fund, or to any of the plaintiffs who are donors thereto.

7. The donors, stockholders and founders of the institution were parties to the contract embraced by the charter. (City of Louisville v. Uni- versity of Louisville, 15 B. M., 660; Chambers v. Baptist Educational Society, 1 B. Mon., 215; Sage v. Dillard, 15 B. M., 356; Hascell v. Madison University, 8 Barb., 184; Allen v. McKean, 1 Sumner, 298; Perry on Trusts, secs. 733, 735, 742; State v. Adams, 44 Mo., 580.)

The trustees have no right in equity to change the objects and con- tracts of the donors on the ground of greater utility, or an alleged decline of usefulness. (Perry on Trusts, 742; Howard College v· Society for Promotion of Theological Education, 3 Gray, 280.)

Any stockholder or donor in or to the endowment fund, or for the erection of a college, no matter how small his interest, may appeal to equity to prevent the perversion of the funds from the object of the donors, or the violation of the contract embraced in the charter of the college. (Kean v. Johnson, 1 Stockton, 408; High on Injunctions, secs. 1203, 1204; Chambers v. Baptist Educational Society, 1 B. Mon., 222.)

8. As the Board of Education and Conference never attempted to carry the provisions of the second section of the act of Sept. 17, 1861, into effect, and allowed it to remain inoperative until 1887, the appellants could not have instituted suit; but as soon as appellees undertook to carry said section into effect by removing the college, appellants did have the right to bring the suit, and their failure to sue earlier can not be construed into an acquiescence or ratification of said amend- ment. (Fry's Ex'r v. Lex. & B. S. R. Co., 2 Met., 322.)

The act of January 12, 1860, was not an amendment but a *new act* altogether (St. Mary's Church, 7 Serg. & Rawle, 562; Sage v. Dillard, 15 B. M., 355) and unconstitutional unless accepted by the donors; and even if accepted by the donors it confers no power upon the Board of Conference to remove the college.

LOCKHART & LYNG, THOMAS H. HINES OF COUNSEL ON SAME SIDE.

Bryan, &c., v. Board of Education Ky. Annual Conference M. E. C., South.

D. L. THORNTON for appellees.

1. The charter, as originally passed (Act of Jan. 12, 1860) empowers the Conference, through the Board of Education, to locate its college at any point within the bounds of the Conference, and to change the location within those bounds at its pleasure, there being nothing in the charter which expressly or by implication prohibits or forbids the exercise of the power of removal by the Board of Education. (Maysville & Mt. Sterling Turnpike Co v. Ratcliffe, 8 Ky. Law Rep., 935; Commonwealth v. Covington & Lexington Turnpike Road Co., 9 Ky. Law Rep., 539.)

2. But if the original act did not confer this power of removal, such power was conferred by the act of September 17, 1861.

The claim made for appellants that the act of Sept. 17, 1861, relates to more than one subject, and that the title does not express the subject-matter of the act, and that the act is, therefore, unconstitutional, is not well founded. A statute can not be declared unconstitutional upon this ground where, as is the case here, all the provisions relate, directly or indirectly, to the same subject, have a natural connection, and are not foreign to the subject expressed in the title. (Phillips v. C. & C. Bridge Co., 2 Met., 219; Smith v. Commonwealth, 8 Bush, 112.)

An act may be constitutional as to some of its provisions, although unconstitutional as to others. (Gayle v. Owen Co. Ct., 83 Ky., 61.)

All doubts of the constitutionality of an act must be solved in favor of its validity. (Cum. & Ohio Railroad Co. v. Barren County Court, 10 Bush, 604; Cooley's Const. Lim., 4th ed., side page, 182–3.)

Nor can the act of Sept. 17, 1861, be declared unconstitutional upon the ground that it usurps judicial power.

A declaratory statute is valid if the design be merely to establish a construction of the doubtful law for the determination of cases that may arise in the future. (Cooley's Const. Limit., 4th ed., p. 94, top page, 113.)

Retrospective legislation is not expressly prohibited by either the Constitution of the United States or of Kentucky, unless it impairs the obligation of a contract. (Henderson & Nashville Railroad Co. v. Dickison, 17 B. M., 173.)

An express acceptance of the act of Sept. 17, 1861, was not necessary. When application is made by a corporation for an amendment to its charter, an acceptance of the amendment is not necessary. (Angell & Ames on Corporations, 11th ed., sec. 83, p. 70, and sec. 238.)

But the act of Sept. 17, 1861, was substantially accepted both by the Board of Education and the Conference, and thereupon became as much a part of the original charter as if it had been included

. therein. (Lou. & Port. Railway Co. v. Lou. City Railway Co., 2 Duv., 178.)

3. The scholarships do not in any way prevent the exercise of the power of removal. The scholarship is simply a contract between the Board of Education and the owner of it. (Trustees of Howard College v. Turner, 71 Ala., 439; s. c., 46 Am. Rep., 326; Pa. College Cases, 63 Pa. St., 428.) And the Board of Education fulfills its contract when the tuition contracted for is furnished within the bounds of the Conference, all the owners of scholarships, wherever residing, having the same rights and occupying the same position toward the Board of Education and the college.

4. A covenant to "permanently locate" an institution at a certain place is fulfilled by a location of the institution at the place, with a *bona fide* intention at the time to permit it to remain there; and a subsequent removal, when a change of circumstances induces it, is not a breach of the covenant, and can not be prevented by the covenantees. (Adams v. County of Logan, 11 Ill., 339; Harris v. Shaw, 13 Ill., 467; Mead v. Ballard, 7 Wall., 290; Pennsylvania College Cases, 63 Pa. St., 428; s. c., 13 Wall., 190.)

5. As there is no allegation of fraud or mistake, it is not competent to show by parol the inducements which led appellants to enter into the contract represented by the scholarships; and even if fraud were alleged and proved, the relief to which appellants would be entitled would be a cancellation of the contract, and they are not asking or suggesting such a thing. (Wright v. Shelby Railroad Co., 16 B. M., 4; Irvine v. Turnpike Co., 23 Am. Dec., 53; Parker v. Thomas, 81 Am. Dec., 385; Martin v. Pensacola & Ga. R. Co., 73 Am. Dec., 713; 71 Ala., 439.)

6. The courts can not listen to the individual holder of a scholarship when he asserts against the decree of the Conference a right to restrain a removal of the college because he has bought and improved property in Millersburg upon the expectation that the college would remain. The propriety of the removal is a question which rests with the Conference, and not with the courts for decision.

W. A. SUDDUTH ON SAME SIDE.

1. The stockholders of the Millersburg Male and Female Collegiate Institute have abandoned their charter, and sold out their stock in the corporation, and that corporation, if not repealed, is dead by abandonment. (Waterman on Corporations, 843.)

   This was not an eleemosynary corporation. In eleemosynary corporations there are no stockholders, while in this corporation it was expressly declared that the persons who contribute are stockholders, and that, upon a surrender of the charter, the property should vest in them as individuals. Therefore, the stock of the Millersburg Male

and Female Collegiate Institute was not a trust in the hands of these defendants, and the statute of limitations is a bar.

An eleemosynary corporation defined. (Bouvier, vol. 1, p. 585.)

2. By the act of January 12, 1860, the Educational Fund was incorporated, and it has no fixed place, but the fund may be used anywhere within the bounds of the Conference.

The preamble may be resorted to to aid in the construction of a statute. (Sedgwick on Statutes, p. 43.)

3. The act of Sept. 17, 1861, was an act that the Legislature could constitutionally pass in order to declare the meaning of the act of January 12, 1860, and it is virtually an amendment to the act of 1860.

A declaratory statute is not unconstitutional. (Cooley's Const. Limit., 5th ed., p. 111; Commonwealth v. Duff, 10 Ky. Law Rep.; Aiken v. Railroad Co., 20 N. Y., 370.)

The Legislature, by virtue of the power it reserves in the twelfth section of the act of January 12, 1860, to amend or alter that act, had the power to pass this amendment. (Pennsylvania College Case, 13 Wall., pp. 190, 222.)

To attain the object of the charity in question the trustees have the discretion as to where the fund should be used, and *a fortiori* the Legislature as *parens patriæ* may intervene, and so amend the charter of a charity as to attain this end, especially when that right is reserved. Charities are under the perpetual guardianship of the sovereign power. (Vidal v. Girard's Ex'rs, 2 How., 195; Stanley v. Colt, 5 Wall., 163; Attorney General v. South Sea Company, 4 Beav.)

4. Neither the recital in the preamble of the act of 1860, that a college has been located at Millersburg, Ky., nor the provision in the scholarships, that the tuition is to be furnished at the college or university to be established at Millersburg, binds the board to forever use the fund at Millersburg.

The provision in a contract that an institution shall be "permanently located" at a particular place is not equivalent to a covenant to keep the institution there forever. (Harris v. Shaw, 13 Ill., 463; Meade v. Ballard, 7 Wall., 290; Adams v. Logan County, 11 Ill., 336; Houston v. Jefferson College, 63 Penn. St., 428; s. c., 13 Wall., 190, 213.)

The motives that induced the scholarship-holders to subscribe can not be interpolated into the terms of the contract. The motive inducing subscription is one thing, the consideration of the contract is another. (Irvin v. Turnpike Road Co., 2 Pen. & Watts, 466; Philpot v. Gruninger, 14 Wall., 576.)

5. After the arrangement whereby stock in the old Millersburg Male and Female Collegiate Institute was transferred to the Board of Education, and the deed of November 4, 1861, was made, and the board had entered and taken possession of the property, for a period of nearly

thirty years, these claimants acquiesced in the arrangement, and after that lapse of time, and that degree of acquiescence, they are not entitled to any recognition at the hands of the chancellor. (High on Injunctions, vol. 1, sec. 11; Great Western R. Co. v. Oxford, 3 De G. M. & G., 341.)

Moreover, it is one of the prerequisites that the petition, when an injunction is sought, shall show that there is no adequate remedy at law; but a scholarship, such as those relied on in this case, is an ordinary contract between the corporation and the scholarship-holder, and for a breach of that contract in refusing to furnish tuition, damages may be recovered at law. (Trustees of Howard College v. Turner, 71 Ala., 429; Pennsylvania College Case, 13 Wall., 190.)

6. The right of visitation is confided to the members of the Board of Education, and unless they are guilty of a breach of trust, or seek to divert the funds from the original object of the donors, courts of equity can not interfere. (Nelson v. Cushing, 2 Cush., 519.)

B. F. BUCKNER of counsel on same side.

CHIEF JUSTICE LEWIS delivered the opinion of the court.

This action was brought by G. H. Bryan and seven associates for themselves and other share-holders in the Board of Education of the Kentucky Annual Conference of the Methodist Episcopal Church South, and in the Millersburg Male and Female Collegiate Institute, against said board for an injunction, that was granted temporarily, restraining defendant from selling or disposing of a certain lot of land and buildings of the Kentucky Wesleyan College, or removing its capital or property from Millersburg to Winchester, or using any of such capital or fund for any other purpose or at any other place than proper conduct and management of the College at Millersburg.

It appears that in January, 1858, a meeting of citizens of Millersburg was held to devise means to purchase land and such buildings for an institution of learning and boarding-house, to cost about fifteen thousand dollars, and to be under supervision of

:330      KENTUCKY REPORTS.     [Vol. 90.

Bryan, &c., v. Board of Education Ky. Annual Conference M. E. C , South.

some denomination. At that meeting a resolution was adopted, pledging the members for the amounts respectively subscribed in order to secure a male and female collegiate institute at that place on the following conditions: "(1) That it be an institute for the Covington District, Kentucky Conference, and under control of the Methodist Episcopal Church South; (2) that the trustees and building committee be appointed by the Quarterly Conference of the Millersburg station, the former to be subject to approval of the conference; (3) that it be upon the joint stock principle, the shares twenty-five dollars each, subject to sale and transfer; (4) that in case said church fail to sustain the institute, and it, from any cause, be discontinued, the property to revert to the stockholders *pro rata.*"

To carry out the enterprise thus started, "An act to incorporate the Millersburg Male and Female Collegiate Institute" was passed February 16, 1858, the preamble thereof being as follows: "Whereas, divers citizens in and near the town of Millersburg, in the county of Bourbon, have subscribed a considerable sum of money for the purpose of erecting in or near said town a seminary of learning, to be under control and supervision of the Kentucky Annual Conference of the Methodist Episcopal Church South."

By provision of the act William Nunn and others were constituted a body-corporate, by name of "Trustees of the Millersburg Male and Female Collegiate Institute," with power to receive additional subscriptions and donations in aid of the institute, and to establish rules for its government; but the Quarterly

Conference of the Millersburg station was empowered to appoint trustees, subject to approval of the Annual Conference.    Section 4 is as follows :  '' All persons who shall subscribe twenty-five dollars or more in aid of said institute shall be stockholders therein, said sum to constitute a share.    And if said Methodist Church shall ever relinquish or surrender, or cease to exercise a control over said institute, then and in that case its control and management shall revert to and vest in said stockholders, who may, at a meeting for that purpose called, proceed to elect a board of trustees. And if said corporation shall cease to exist or be dissolved, or its charter surrendered or repealed, all its property of every kind or description shall vest in said stockholders in proportion to their respective shares.'' By section 5 the right to amend or repeal the act was reserved to the Legislature.

September, 1858, the trustees presented to the Annual Conference, in session at Millersburg, a written memorial, stating the charter had been secured, subscriptions of stock amounting to seven thousand five hundred dollars obtained, a suitable lot of land purchased, and steps taken to erect necessary buildings, and requesting conference to accept the subscriptions, land, &c., upon the terms set forth in the charter, which was done.    And conference at the same time resolved to raise an additional sum of ten thousand dollars, to be subscribed as its stock in the institute, and to constitute its educational fund.    But it was subsequently, though during the same session of conference, agreed between it and the original stockholders for the charter to be so amended as to make it a male

instead of a mixed school, and that each party would raise an additional subscription of ten thousand dollars. However, September 30th, 1858, the Board of Education appointed by conference, though not then made by statute a corporation, at a meeting of its members, devised a different and enlarged plan, which involved founding a first-class college, having an endowment fund of twenty thousand dollars, one-half of which it was designed to raise by issue and sale of scholarships. But, according to that scheme, no part of the capital raised for the educational fund was to be appropriated to pay salaries of professors, nor any other expenses, only ten thousand dollars thereof, as already pledged by conference, to be used for erecting college buildings. And at the same time, as part of the plan, the following proposition was made: "That if the original stockholders of the Millersburg Male and Female Collegiate Institute will raise in Bourbon county and that portion of Nicholas lying in the vicinity of Millersburg ten thousand dollars, in addition to ten thousand dollars already pledged by them, the entire amount of twenty thousand dollars thus raised to be invested in the erection of the buildings, we will issue scholarships for said twenty thousand dollars on the same terms as to others, provided their amount of stock in that case be surrendered, in lieu of said issue of scholarships, to the Kentucky Annual Conference of the Methodist Episcopal Church South to be held by said conference as part of the educational fund."

The plan of the Board of Education having, October 1, 1858, been submitted to the original stockholders

assembled in Millersburg, was, without dissent, ac-
cepted by those present; and we think it sufficiently
established that, either at that time or soon after, it
was agreed to and scholarships received in lieu of their
stock by all of them.   September, 1859, the plan pro-
posed by the Board of Education, and acceptance by
the original stockholders, were reported to and ap-
proved by the Annual Conference held in George-
town; and by direction of that body an act was
applied for, and January 12, 1860, passed by the
Legislature, entitled "An act to incorporate the Board
of Education of the Kentucky Annual Conference of
the Methodist Episcopal Church South," the pream-
ble thereof being as follows: "Whereas, the Ken-
tucky Conference of the Methodist Episcopal Church
South has resolved to form an educational fund and
establish a college for the promotion of literature,
science, morality and religion within the limits of said
Conference, and having, in fact, secured the sum of
fifty-seven thousand dollars in cash and reliable notes,
and located an institution at Millersburg, Bourbon
county, which is now ready for occupancy, in order
to give full legal effect thereto."

By provisions of the act certain persons were con-
stituted a corporate body, by name of "The Board of
Education of the Kentucky Conference of the Meth-
odist Episcopal Church South," and invested with
authority to carry out the purposes set out in the
preamble, subject, however, to control of the Annual
Conference.

Section 11 is as follows: "That an act to incorporate
the Millersburg Male and Female Collegiate Institute,

334 KENTUCKY REPORTS. [VOL. 90.

Bryan, &c., v. Board of Education Ky. Annual Conference M. E. C., South.

approved February 16, 1858, be, and the same is hereby, repealed." And by section 12 the Legislature reserved the right to amend or repeal the act.

September 17, 1861, the Board of Education procured the passage of an act amending the one of January 12, 1860, section 1 thereof being as follows: "That it shall be lawful for the trustees of the Millersburg Male and Female Collegiate Institute who were in office January 12, 1860, when the act incorporating said institute was repealed, or their successors, to convey by deed to the Board of Education of the Kentucky Annual Conference of the Methodist Episcopal Church South, the property held by said trustees in or near the town of Millersburg, for the purpose of carrying into effect any contract made by said trustees as stockholders of said institute with said board, and their conveyance recorded in the proper office shall be effectual to pass title of said property to said board and their successors."

By section 2 it is provided that "nothing contained in the act incorporating said board, approved January 12, 1860, shall be construed so as to prevent or hinder said board or their successors from removing the seat of their college from Millersburg to any other place in the bounds of the Kentucky Annual Conference."

The action of the Board of Education was duly reported to the Annual Conference, held in Paris September 25, 1861, and the act mentioned was by it accepted; and in November, 1861, the trustees of Millersburg Male and Female Collegiate Institute, by deed recorded in the Bourbon County Court Clerk's office, conveyed the lot in question to the Board of Education.

In September, 1886, the Annual Conference, held in Winchester, adopted a resolution for appointment of a committee of twenty, including members of the Board of Education, to receive and pass upon "any proposal looking to continuance in Millersburg, or removal of Kentucky Wesleyan College," their action to be binding and final; and September, 1887, that committee reported to the Annual Conference, held in Covington, acceptance by it of a proposition made by citizens of Winchester to give five acres of land on which to erect buildings, and thirty-five thousand dollars, upon condition the college be removed from Millersburg to that place. And thereupon conference approved the committee's action, and directed the removal made, but it has been so far prevented by the injunction mentioned.

It seems to us the original stockholders of the Millersburg Male and Female Collegiate Institute are not in a position to question either the efficacy or validity, except as to section 11, of the act of January, 1860; for it is not only in strict pursuance of and entirely consistent with, but was indispensable to carry out the plan of the Board of Education, which they accepted without, so far as this record shows, any dissent, and have had the benefit and enjoyment of ever since.

Section 11 is in conflict with section 37, article 2 of the State Constitution, and, therefore, void, because repeal of the charter of February 16, 1858, which was sought to be accomplished by it, does not relate to nor is embraced by the subject expressed in the title of the act of January, 1860. But repeal of that charter was

not actually necessary, because the corporation created by it practically ceased to exist after the contract made between the original stockholders and Board of Education, whereby the latter acquired for use of the Kentucky Wesleyan College possession of and equitable title to all property of the Millersburg Male and Female Collegiate Institute, and the trustees thereof were deprived of their function, and divested of every right except the naked legal title; and as section 1 of the act of September 17, 1861, merely empowered those trustees to convey that property to the Board of Education which they might have, without, been coerced to do by a court of equity, no injury was done by it.

It thus results that the decisive question in this case is, whether section 2 of the last named act is valid.

Counsel for appellant contends it is unconstitutional because, being declaratory of the meaning of the act of 1860, already passed, and not an enactment of what should thereafter be law in that regard, it is in its nature judicial and not legislative. "But in any case the substance of the legislative action should be regarded rather than the form; and if it appear to be the intention to establish by declaratory statute a rule of conduct for the future, the courts should accept and act upon it without too nicely inquiring whether the mode by which the new rule is established is or is not the best." (Cooley's Con. Lim., 115.) And as, therefore, the power of removal had not been expressly granted by the act of 1860, incorporating the Board of Education, and could not have been exercised without, section 2 of the act of 1861 may fairly and should be regarded as intended to then give it.

Counsel for appellee contends that, in virtue of the reservation contained in section 12 of the act of 1860, the Legislature had the unqualified right to enact section 2 of the act of 1861 as an amendment. But it seems to us, in view of the purpose of the act of 1860, which was to effectuate the contract previously made between the original stockholders and Board of Education, the power to amend reserved by the Legislature could not have been exercised to the prejudice of vested rights, if such existed. And at last the inquiry arises whether the section in question is, in meaning of the United States Constitution, a law impairing the obligation of a contract.

The Male and Female Collegiate Institute projected in January, 1858, was evidently intended to be local in character, established and sustained principally, if not wholly, by citizens of Millersburg and vicinity. And although, by the act of February, 1858, the Quarterly Conference of Millersburg station was empowered to appoint trustees, and the control and supervision of the institute was given to the Annual Conference, still, at the time the memorial heretofore mentioned was presented to that body no stock had been subscribed except by citizens of Millersburg and vicinity, nor did they, in virtue of contract or otherwise, have a right to a reasonable expectation of assistance from others. It was, therefore, then necessary in order to protect their rights, and in the power of the original stockholders to provide, as was done in section 4 of that act, that in case the corporation thereby created ceased to exist or was dissolved, or its charter was surrendered or repealed, all its prop-

erty should vest in the stockholders in proportion to their respective shares. But by the plan subsequently adopted, what was at first intended to be, and in the preamble to the act of February, 1858, called a seminary, was changed to a first-class college, for the endowment and support of which aid of the Annual Conference was pledged; the stock subscribed originally with the single object of buying a lot and erecting buildings suitable for a seminary was voluntarily commuted by the owners for scholarships in the college; an endowment fund of two hundred thousand dollars was contemplated, of which nearly one hundred thousand dollars was agreed to be paid for scholarships sold to persons residing in different parts of the conference bounds; and the title and possession of all the property passed to the Board of Education, to constitute part of the endowment fund, where it remained without dispute or protest from 1860 to the institution of this action.

Neither the contract between the original stockholders and Board of Education, nor act of 1860, contains an express condition that the title of the property, which became 'part of the endowment fund, was to be held upon condition the college be forever conducted and maintained at Millersburg, and nowhere else within the territorial limits of the Annual Conference; and such condition exists, if at all, by implication only. But the law does not presume a party entitled to a right or benefit of reservation claimed under contract in the absence of an express stipulation, except such as reason and justice dictates.

Not only those residing elsewhere, but as well resi-

dents of Millersburg and vicinity, must be presumed to have regarded the establishment and successful maintenance of a first-class college under the patronage and control of the Annual Conference, as the first and main consideration for the outlay of money made, and the particular locality as of secondary importance. And, therefore, all that can be fairly and reasonably implied in behalf of the citizens of Millersburg is that they expected and believed successful operation of the institution would prove compatible with continuance of it at that place. To now imply any thing else or more would not only involve the absurdity of hazarding or sacrificing an institution of learning, the successful and useful operation of which, within the bounds of Conference, was clearly the main inducement for the great outlay already made, but be in disregard of the rights and interests of those residing elsewhere than at Millersburg, who have contributed, either by purchasing scholarships or donations, very much more than has been raised at that place.

There is mention made in the act of 1860, and also in the certificates of scholarship, of the college being established at Millersburg, but the language used does not import an agreement it shall permanently remain there; on the contrary, we think it should, as can fairly, be interpreted merely descriptive of the institution.

In our opinion, therefore, there exists no contract or undertaking, express or implied, for continuance of the institution at Millersburg any longer than its useful and successful operation requires. And as the power of removal was conferred by the act of 1861, which all

parties interested must manifestly have been aware of, accepted and acquiesced in for more than a quarter of a century, it is now too late to call it in question.

And in the absence of fraud the Board of Education, controlled by the Annual Conference, must be presumed to have acted in good faith and under belief success of the college required the removal from Millersburg to Winchester. Consequently we need not inquire whether they are or not pursuing the wisest policy, especially as the evidence shows the college has so far been a failure at its present location.

Judgment affirmed.