GEORGE LEWIS, EXECUTOR, *et al., Appellants,* v. R. C. M. GAILLARD, *et al., Appellees.*

1.  Where the income only of an estate is given by will to a State institution of learning, the devise does not lapse by the technical abolishment of the institution, if in fact the institution be promptly re-established though under another name before action is taken by the heirs to assert their supposed rights.

2.  In the absence of controlling words or clear inference, in the will, a devise or bequest to a State controlled institution of learning, will not lapse by reason of a change of public policy as to co-education.

3.  A testamentary gift to a State institution of learning at Tallahassee, one-half the income of which shall be expended for the benefits of students from Leon county at such institution, will continue to vest in that institution though its name be changed and it be made exclusively a college for women and co-education be abolished; and there be other changes in curriculum incident to this main change. This is not effected by the fact that the testator was himself an alumnus of the institution, the will itself indicating no restrictions as to co-education.

4.  Cy pres may be used at least as a doctrine for a liberal construction in favor of a public charitable bequest, especially when the bequest has once vested.

This case was decided by the court En Banc.

Appealed from the Circuit Court for Leon County.

STATEMENT.

This appeal is from an order overruling a demurrer to a bill of complaint. The bill as amended is as follows:
"Rachel C. M. Gaillard, and Henry Gaillard, her hus-

band, of the county of Duval, State of Florida, for them-
selves and for and on behalf of all the heirs and distribu-
tees of James D. Westcott, late of Leon county, Florida,
deceased, and of his estate, bring this their bill of com-
plaint against George Lewis, of Leon county, Florida, as
executor of the last will and testament of said James D.
Westcott, deceased, and as trustee thereunder, and indi-
vidually, and Nathaniel P. Bryan, of Duval county, A. L.
Brown of Lake county, J. C. Baisden of Suwannee county,
P. K. Yonge of Escambia county, and T. B. King of De-
Soto county, all of the State of Florida, as members of the
Board of Control, or the State Board of Control, a corpo-
ration under the laws of the State of Florida, and the
Board of Control or State Board of Control, a corpora-
tion under the laws of Florida, and Napoleon B. Broward,
Governor of the State of Florida, H. C. Crawford, Secre-
tary of State, of the State of Florida, William H. Ellis.
Attorney-General of the State of Florida, W. V. Knott,
Treasurer of the State of Florida, and W. M. Holloway,
Superintendent of Public Instruction of the State of
Florida, as members of the State Board of Education of
Florida, a corporation under the laws of Florida, and the
State Board of Education of Florida, a corporation under
the laws of Florida:   And thereupon your orators com-
plain and say:

That heretofore, to-wit, on the 29th day of April, 1887,
James D. Westcott died in said county of Leon, State of
Florida, leaving a last will and testament, a copy of which
is hereto attached marked 'Exhibit A,' which it is prayed
may be taken and referred to as a part of this bill:

That by the provisions of said will, said testator di-
rected the payment of certain specific legacies therein
mentioned, to persons therein named, and also expressed
his wish that eight thousand dollars should be expended

in the construction of a monument over the graves of his father, mother and himself, and directed that two thousand dollars of funds be held in trust to pay from the interest thereon, the amounts necessary to keep the lot and monument in order, and that the rest of the estate of said testator be held in trust for the benefit of The West Florida Seminary, the institution located at Tallahassee; that only the interest upon the principal should be used yearly; that his executor have authority to change the investments of the funds in his discretion. If, however, he should not qualify, then the investments might be changed by the officers controlling the institution; that at least one-half of this interest should be expended for the benefit of students of Leon county under the direction of the managing officers of the institution; that none of said trust property or moneys, or said estate of said testator should be used for building or improvement of grounds.

By said last will and testament, said testator appointed said defendant George Lewis as executor of his said will.

That shortly after the death of said James D. Westcott, said will was proven and admitted to probate in court of the County Judge of Leon county, Florida, and said defendant George Lewis did duly qualify as the executor of said will and did thereby become trustee of all the property of said estate left in trust for the benefit of The West Florida Seminary according to the provisions of said will.

That James D. Westcott at the time of his death left a large amount of personal property and moneys of great value, and also left a large amount of real estate which belonged to him at the time of his death, to-wit: situated in Leon county, Florida, and elsewhere in said State, and said defendant George Lewis did thereupon take posses-

sion of all said property, real and personal, and has ever since collected and received the rents, income, issues, interest and profits thereof, and as your orators are informed and believe and so allege, has made changes of investments of property of the said estate, and sold property thereof, and invested the proceeds thereof in other property, and have exchanged the property therof and has bought property with moneys and assets of the said estate.

That said defendant Lewis did also proceed to act as Trustee of the property of said estate left in trust by said will for the benefit of said West Florida Seminary.

Your orators are informed and believe, and so allege. that said defendant Lewis has not as such executor and as trustee as aforesaid, or otherwise, fully and sufficiently accounted for said trust property and the management thereof, and disposition thereof, by him.

That afterwards, to-wit, by statute of the State of Florida, to-wit, chapter 5384 of the statutes of the said State, approved June 5th, 1905, and which took effect immediately upon its approval, according to the terms thereof, The West Florida Seminary mentioned in said will, and for the benefit of which, said trust property was by said will directed to be held in trust as therein set forth, was abolished, and each and every of the charters, franchises, powers, rights and privileges granted to or possessed by it were thereby revoked, vacated and abolished.

That thereupon, as your orators are informed, advised and so allege, said trust created by said will of said James D. Westcott for the benefit of The West Florida Seminary, ceased and determined, and the property held by said defendant Lewis as executor or trustee under said will or which was the property of said estate or

which had accrued to said estate or to said trust fund or the proceeds thereof, or property acquired therefrom or thereby, or by investments or use of property of said estate or said fund, passed to the heirs or distributees of said James D. Westcott or his estate, or they became entitled thereto and said trustee became trustee for them in the premises, and to hold and apply such property, real, personal and mixed, for their use and benefit.

Your orators are informed and believe and so allege, that said defendant Lewis has expended a large amount of the principal of said property in or upon a building or buildings and improvement of the grounds at or about the property and site formerly of The West Florida Seminary, contrary to the directions of said will, and that he should account to these complainants and the other heirs and distributees of the said James D. Westcott and his estate therefor and pay and compensate them for the same.

Your orators are informed and believe and so allege, that said executor has paid and discharged the specific legacies of the said will.

Your orators are also informed and believe and so allege that said defendant Lewis has made provision for a monument in accordance with the terms of said will as hereinbefore mentioned and as appears therein.

Your orators further show and allege that since the passage of said statute, said institution, The West Florida Seminary, for the benefit of which said property was left in trust as aforesaid by said will, has not only been abolished by law but in fact, and has ceased to operate and has been wholly discontinued and so remains.

That since the passage of said statute and the abolition of said The West Florida Seminary, your orators have for and on behalf of your oratrix Rachel C. M. Gaillard, and

the other heirs and distributees of said James D. West-
cott and his estate, notified said defendant George Lewis
as executor and trustee as aforesaid, not to pay, transfer,
convey or deliver any of said trust property or property
of the estate of James D. Westcott, deceased, to said
Board of Control, or said State Board of Control, or to
the said State Board of Control, or to said State Board
of Education of Florida, or to any Board, corporation,
or person other than said heirs and distributees, and have
demanded and do demand that he account to said heirs
and distributees for said property and all property of the
estate of said James D. Westcott, deceased, which he has
received or disposed of, and that he hold all property of
the said estate or which was heretofore of said trust for
said heirs and distributees until same can be properly
distributed and conveyed to them or divided among them,
that is to say all such property remaining on hand not
properly expended or disposed of according to the terms
of said will, including all the principal and corpus of
said trust property, but said defendant Lewis has de-
clined to admit or recognize the rights of said oratrix and
the other said heirs and distributees in the premises or to
make any distribution or conveyance of any of said prop-
erty to them or to any of them without the decision and
decree of a court of competent jurisdiction in the
premises, establishing and decreeing the rights and title
of said heirs and distributees in the premises and the
duties and the obligations of said executor and trustee in
the premises. Your orators further show that as they are
informed and believe and so allege said Board of Control
or State Board of Control and said State Board of Edu-
cation of Florida claim some right, title or interest in or
to said property or the interest or income thereof or both
by virtue of said will and said statute, or to be the bene-

ficiaries of said trust. But your orators are advised and believe and so allege that said Boards have not and neither of them have any right, title and interest whatsoever in or to said property or interest or income thereof or any part thereof and are not the beneficiaries of said trust of said will or any trust or provision thereof and have no right of any sort to said property or any part thereof, but said claim of said Boards constitutes a cloud upon the rights, title and interest of said oratrix and said other heirs and distributees in and to said property in the premises, and also prevents said executor and trustee from recognizing and acting upon the rights, title and interest of said oratrix and said other heirs and distributees in the premises.

That by the terms of said statute, not only is the West Florida Seminary, which is stated therein to be then designated and known as the Florida State College, abolished, but it is specifically enacted by said statute that all Boards of Trustees, managers and officers of the several institutions therein mentioned, including the West Florida Seminary aforesaid, be and the same was thereby abolished. And your orators further allege that there are now no trustees, managers or officers of the West Florida Seminary aforesaid and no persons acting as such or claiming to be such trustees, managers or officers.

Your orators further show and allege that since the enactment of said statute the uses, purposes and trusts for which said property and the interest theron was devised and bequeathed by said will, have been entirely destroyed and have wholly ceased; that said West Florida Seminary was an institution for the instruction of persons, both male and female, and to which pupils, both male and female were admitted; that said James D. Westcott was a pupil of and was educated at said West Flor-

ida Seminary,—said institution which was located at Tallahassee,—and having such connection and association therewith did make said provisions, devises and bequests in his will in trust for that institution alone as specifically named and designated in his said will as aforesaid; and that it is not in accordance with the provisions, intentions or effect of said will that said property or income or interest thereon or any part thereof should go to said Board of Control or said State Board of Education of Florida or be applied to any institution created or provided for by said statute or any purpose or use now existing, but, as your orators are advised and believe and so allege, the said property, principal and interest and every part thereof, as before mentioned, has become vested in the heirs and distributees of said James D. Westcott, deceased, and of his estate, or they have become entitled thereto, and entitled to have said executor and trustee hold the same for them and make proper distribution and conveyance of the same to them and to have the decree of this Honorable Court to that effect.

Your orators further show and allege that said James D. Westcott died unmarried and without any lawful issue surviving him and without any brother or sister or lawful issue or descendant of any brother or sister surviving him; that said James D. Westcott, who is hereby designated as James D. Westcott 3d, was the son of James D. Westcott hereby designated as James D. Westcott 2nd. and of Rebecca B. Sibley his wife; that the said James D. Westcott 2nd, was the son of James D. Westcott 1st, and Ann H. Hampton, his wife; that John Westcott was the child of said James D. Westcott 1st, and said Ann. H. Hampton, and was the uncle of said James D. Westcott 3rd, who left the property and made the will hereinbefore referred to; that said John Westcott was married to

Catherine Paullin and had one child, to-wit, Rachel P. Westcott, who married Andrew P. Miller and died in the year 1881, leaving lawful issue, to-wit, only one child, Rachel Catherine Miller, your oratrix, who was married to said complainant, Henry Gaillard; said John Westcott died at St. Augustine, Florida, to-wit, on the 31st day of December, 1888. Your orators are informed and believe and so allege that a correct statement of family record of the marriages, births and deaths of said Westcott family, including the marriage of James D. Westcott 1st, and Ann Harris Hampton, his wife, and the children born to them, and the marriages and deaths of said children and the descendants of the same, are shown by a written record or statement made and compiled by Miss Emma Westcott, one of the children of said James D. Westcott 1st and said Ann Harris, his wife, which was so made, compiled and written out by her, to-wit, in the year 1895, after which, and several years ago, said Emma Westcott died, a copy of which statement or record is hereto attached, marked Exhibit B, and is made hereof a part, and it is prayed may be taken and referred to as a part of this bill; that your orators have made diligent inquiry, but have not been able to ascertain with certainty the names and places of residence of all the descendants of said James D. Westcott 1st, who are heirs or distributees of said James D. Westcott 3, through or on the side of his father, James D. Westcott 2nd, but so far as your orators have been able to ascertain the same, they allege that said heirs and distributees are as shown by said Exhibit B.

Your orators are advised and so allege that said James D. Westcott 3rd, having died without any wife, or children, mother or father, brother or sister or their descendants surviving him, that his estate and said trust prop-

erty, in accordance with the statutes of Florida is to be divided into moities, or two equal portions, one of which goes to the paternal and the other to the maternal kindred, as provided by the statute, and that your oratrix, Rachel C. M. Gaillard is one of such heirs and distributees of said James D. Westcott 3d on the paternal side as herein stated; that the mother of said James D. Westcott 3d was Rebecca B. Sibley as aforesaid; that as your orators are informed and believe she had three brothers, John Sibley, Samuel S. Sibley and Chas. S. Sibley, and had three sisters, who married and moved away, to-wit, Sarah Sibley who married one Abbott and lived and died in Louisville, Kentucky, having children, to your orators unknown, Jane Sibley, who married one Ogden and lived and died in Louisville, Kentucky, leaving children to your orators unknown, and Martha Sibley, who married one Miliken and lived in Terre Haute, Indiana, but your orators are unable to state further particulars concerning her; that said John Sibley formerly lived in the city of Philadelphia in Pennsylvania, and your orators are informed and believe was married and had several children, to-wit, Edward, Frank and Emily, but your orators at present are not able to make a more definite statement concerning them; that Samuel S. Sibley married and he and his wife are both dead; that he left surviving him two daughters, Laura Sibley, who was married to one Colding, and who and her husband are both now dead; leaving the following children surviving them, to-wit, Henry S. Colding, Robert L. Colding, Florence Colding and Carrie Colding, all of Savannah, Georgia; that said Chas. S. Sibley married and had several children, both he and his wife are now dead, and their only surviving child is Mrs. Celia G. Curtis, wife of Henry Curtis, formerly of Quincy, Florida, now of Jacksonville, Florida;

all the other children of said Charles C. Sibley died, leav
ing no issue or descendants surviving them, excepting
Jesse C. Sibley, a son of said Chas. S. Sibley, who mar-
ried and had one daughter, Leo C. Sibley, who now resides
in Savannah, Georgia, and is an heir and distributee of
said estate, through her father, to the extent of the share
that he would have therein, if living.

Forasmuch therefore, as your orators are without
remedy in the premises, save in a Court of Equity, to the
end that the defendants may be required to make full,
true and direct answers to this bill of complaint, but not
under oath, oath to said answers being waived, that said
trust created by said will of said James D. Westcott for the
benefit of the West Florida Seminary, be decreed by this
Honorable Court to have ceased and determined; and
that the property held by said defendant George Lewis,
as executor or trustee or otherwise, under said will, or
which was the property of said estate of said James D.
Westcott, or which has accrued to said estate or to said
trust fund or the proceeds thereof or property acquired
therefrom or thereby, or by investment or use of property
of said estate or of said fund or said property, and every
part thereof, did, upon the passage and approval of said
statute, pass to the heirs and distributees of said James D.
Westcott, or his estate and that they then became enti-
tled thereto, and said trustees then became trustee for
them in the premises, and that he hold and apply such
property, real, personal and mixed for their use and bene-
fit; that it be further decreed that said defendants, mem-
bers of the Board of Control or of the State Board of
Control, a corporation under the laws of Florida, and
said Board of Control or State Board of Control, a corpo-
ration under the laws of Florida, and said defendants,
members of the State Board of Education, and the State

Board of Education of Florida, a corporation under the
laws of the State of Florida, have no right, title or inter-
est whatsoever in or to said property or any part thereof;
that said defendant, George Lewis, as such executor and
Trustee as aforesaid, and individually, if he shall be
found to have done or omitted anything, whereby he has
incurred an individual responsibility or liability in the
premises, do account to your orators and also to the other
heirs and distributees of said James D. Westcott and of
his estate for said trust property and all the property of
the estate of said James D. Westcott, deceased, which he
has received and holds or has disposed of; and that he do
hold all property of the said estate, or which was hereto-
fore of said trust, for said heirs and distributees until
the same can be properly distributed and conveyed to
them, or divided among them, that is to say, all such prop-
erty remaining on hand, not properly expended or dis-
posed of according to the terms of the said will, including
all the principal and corpus of said trust fund and prop-
erty, and all such property as said defendant Lewis may
have improperly or without due authority disposed
of; that this Honorable Court may by its decree in the
premises establish, declare and decree the rights and
title of said heirs and distributees in the premises
and the duties and obligations of said executor
and trustee in the premises and may ascertain, declare
and decree who are the heirs and distributees of said
James D. Westcott, deceased, herein designated as James
D. Westcott 3rd, and of his estate and their respective or
several interests or shares therein or thereof; that said
defendant, George Lewis, as such executor and trustee
and individually may be restrained and enjoined by order
of this Honorable Court, during the pendency of this
case, from paying, transferring, conveying or disposing of

any of said property to any Board, corporation or to any person, other than your orators and other heirs and distributees of said James D. Westcott, deceased, and of his estate, and that your orators may have the writ of injunction of the State of Florida issued out of and under the seal of this Honorable Court, enjoining the said defendant Lewis perpetually as it is above prayed that he may be restrained and enjoined during the pendency of this suit; that said defendants, the members of the Board of Control or the State Board of Control, and said Board of Control or State Board of Control, a corporation under the laws of Florida, and said State Board of Education of Florida, a corporation under the laws of Florida, and every of them, be restrained and enjoined during the pendency of this suit from taking, receiving or in any way interfering with said property or any part thereof, and that they may be perpetually enjoined by the writ of injunction of the State of Florida issued as aforesaid, as it is before prayed that they be restrained and enjoined during the pendency of this suit; that if it shall be found necessary or proper, a Receiver may be appointed by this court of said property and every part thereof; that your orators may be allowed and receive from said trust fund and property or said funds and property formerly held under said trust and from the property of said estate their reasonable costs and expenses in this suit, including fees and expenses for their counsel and solicitors herein, and that said entire property of said estate, and the interests therein of all of the heirs and distributees thereof may bear such expenses and costs of bringing and maintaining this suit and establishing or obtaining the decree of this court concerning the right, title and interest of said heirs and distributees in the premises and of bringing said property and fund into this court, and as may

be otherwise rendered necessary or proper in the premises, and that your orators may have such other and further relief in the premises as to equity may pertain and may to the court seem meet.

May it please your Honor to grant unto your orators, Rachel M. C. Gaillard and Henry Gaillard, her husband, the writ of subpœna of the State of Florida, issued out of and under the seal of this Honorable Court, directed to George Lewis, as executor of the last will and testament of James D. Westcott, deceased, and as trustee thereunder and individually and Nathaniel P. Bryan, A. L. Brown, D. C. Baisden, P. K. Yonge, and T. B. King, as members of the Board of Control, or the State Board of Control, a corporation under the laws of Florida, and to the Board of Control or State Board of Control, a corporation under the laws of Florida, and to Napoleon B. Broward, Governor of the State of Florida, H. C. Crawford, Secretary of State of the State of Florida, William H. Ellis, Attorney General of the State of Florida, W. V. Knott, Treasurer of the State of Florida, W. M. Holloway, Superintendent of Public Instruction of the State of Florida, as members of the State Board of Education of Florida, a corporation under the laws of Florida, and to the State Board of Education of Florida, a corporation under the laws of Florida, commanding them and each of them at a certain time and under a certain penalty to be therein stated personally to be and appear before this Honorable Court, and then and there full, true, direct and perfect answers make to all and singular the premises, and further to stand to, perform and abide such further order, direction and decree herein as to this Honorable Court may seem meet.

Cooper & Cooper,
Counsel and Solicitors for Complainants."

"EXHIBIT 'A'

## THE LAST WILL OF JAMES D. WESTCOTT

State of Florida, ⎫
  Leon County. ⎬

         This is my last will and testament. I wish eight thousand dollars expended in the construction of a monument over the graves of my father, mother and myself, with suitable plain inscriptions. I wish and so direct two thousand dollars of funds held in trust to pay from the interest thereon the amounts necessary to keep the lot and monument in order.

I direct one thousand dollars to be given or paid to Mrs. Mary Archer, and three thousand dollars to my aunt, Miss Emma Westcott of St. Augustine.

The rest of my estate, I wish held in trust for the benefit of The West Florida Seminary, the institution located at Tallahassee, with which Col. Rivers is connected.

I wish only the interest upon the principal used yearly, and in this and in all other matters my executor is hereby given authority to change investments of funds in his discretion. If, however, he should not qualify, then the investment may be changed by the officers controlling the institution. I wish at least one-half of this interest expended for the benefit of students of Leon county under the direction of the managing officers of the institution. I wish none of it used for buildings or improvements of grounds.

This will executed the 28th day of August, A. D. 1884.

Attested and subscribed by us in the presence of the said James D. Westcott and in the presence of other, each of us witnessing the signature and seal of the said James D. Westcott and that of the other witnesses this 28th August, A. D. 1884.

James D. Westcott    (Seal)

    W. M. McIntosh.
    W. M. McIntosh, Jr.
    W. D. Barnes, Jr.

I appoint George Lewis, my friend, Executor of this my will.

Same attestation repeated. | James D. Westcott    (Seal)."

## "EXHIBIT 'B'

### FAMILY RECORD OF JAMES D. WESTCOTT AND ANNE HAMPTON HARRIS, HIS WIFE.

James Diament Westcott, born January 26th, 1775, in Bridgeton, New Jersey. He married Anne Harris Hampton, daughter of Dr. John Thomas Hampton, January 1st, 1796, at Cedarville, N. J. James Diament Westcott died at Trenton, N. J., March 2nd, 1841. Anne H. Westcott was born Oct. 27th, 1776, died at Trenton, October 19th, 1849.

Children of James D. and Anne Hampton Westcott.—
Births:

1st. Marie Adgate Westcott, born November 29th,
1796, in Bridgeton, N. J. Died June 11th, 1846, at Tren-
ton, N. J.

2nd. James Diament Westcott, born Nov., 1798, died
Aug. 5, 1799, aged nine months; born and died at Alex-
andria, Virginia, buried in the old Presbyterian cemetery.

3rd. Sarah Diament Westcott, born at Alexandria,
1800, April 23rd; died April 25th, aged 2 days.

4th. James Diament Westcott, born at Alexandria, Vir-
ginia, May 12, 1802, died at Montreal, Canada, April 29th,
1887, aged 75 years.

5th. Hampton Westcott, born at Georgetown, D. C.,
Sept., 1803, died at sea, 1855.

6th. William Westcott, born June, 1805, Cedarville,
N. J., 1805, died at Philadelphia, Pa., Christmas Eve,
1865.

7th. John Westcott, born June 16th, 1807, at Cedar-
ville, died December 31st, at St. Augustine, Fla., 1888.

8th. Gideon Granger Westcott, born at Cedarville, New
Jersey, March 31, 1809, died in Philadelphia, January
2nd, 1889.

9th. Richard Dinmore Westcott, born at Cedarville,
Cumberland, N. J., December 22nd, 1810; is still living
(1890) in Texas.

10th. George Clinton Westcott, born at Jones Island,
Cumberland Co., New Jersey, September, 1812, died at
Bridgeton, N. J., June 4th, 1817.

11th. Margaret Hampton Westcott, born at Jones'
Island, Cumberland Co., N. J., May, 1814; died at Bridge-
ton, June 16th, 1817.

12th. Emma Westcott, born at Jones' Island, Cumber-

land Co., New Jersey, April 25th, 1816, (still living at St. Augustine, Fla., 1895).

13th. George Clinton Westcott, born at Bridgeton, N. J., April 5th, 1818, died at sea January 8th, 1853, on his way to California.

14th. Bayse Newcomb Westcott, born in Bridgeton, Cumberland Co., N. J., November 29th, 1820, died at Philadelphia, December 5th, 1890, buried at Woodlands Cemetery.

15th. Isaac Hampton Westcott, born at Bridgeton, N. Jersey, September 4, 1822, died August 3rd, 1827.

Marriages of children of Jas. Diament and Anne Hampton Westcott.

U. S. Senator James Diament Westcott, fourth child of J. D. W., married Rebecca Bacon Sibley, 1820, of Bridgeton, N. J., had eight children, all of whom died before their father (except Judge James D. Westcott, third) who died 29th April, 1887, in Tallahassee, Florida. J. D. W. 2nd was Senator from Florida in 1848, during Mr. Polk's administration. Lieut. Hampton Westcott, U. S. Navy, 5th child, married Elizabeth Grant at Trenton, N. J., in 1833, died at Sea in 1836, leaving one child, Thomas Grant Westcott.

Dr. John Westcott, 7th child, married Catherine Paullin of Bridgeton, N. J., March 4th, 1829, had one child, Rachel Parker Westcott, who married Andrew J. Miller (died) in 1881,—leaving one child, Rachel Catherine Miller, who was born ——————— 15th, 1854; married Henry Gaillard (is still living). Dr. Westcott was Surveyor-General of Florida, 1853-1858.

P. M. Gideon G. Westcott, married June, 1832, Caroline C. ——— Dare of Baltimore; they had five children, all died before their father, except Mary, the youngest. Gideon Granger, Westcott was Post Master of Philadelphia during Mr. Buchanan's administration. His second son, Charles S. Westcott, married Anne P. Drake in 1866; they had three children, all now living in Washington, D. C.

Richard Dinmore Westcott, 9th child, married Almira Johnston in 1824, in Florida; had nine children; he and four of his children are still living (1895) in Houston, Texas.

Captain George Clinton Westcott, U. S. Army, 13th child of J. D. W., married Charlotte Shipman Jeffers, in June, 1824, at Camden, N. J. He left two little daughters, Marie and Carrie, both since deceased.

Commander Bayse Newcomb Westcott, U. S. Navy, married 1st, Mary Hart of Philadelphia; 2nd, Maria Howard of Newark, N. J.; 3rd, Eliza Van Liew Roberts of Phila.; 4th, Jenny Phillips of Phila. He left one son, Bayse Bewcombe Westcott, Jr., who is still living aged six years (1895.)"

The following demurrer to the bill of complaint was filed by the defendant George Lewis, Executor:

"First: That the complainants have not in and by their said bill of complaint made or stated such a case as entitles them, or either of them, in a court of equity to any discovery from this defendant or to any relief against him as to the matters contained in the said bill, or any of such matters.

Second: The said bill does not contain any matters of equity whereon this court can ground a decree or give to complainants, or either of them, any relief against this defendant.

Third: The complainants have not shown in and by their bill of complaint that they, or either of them, have or has any title to or interest in the subject-matter of this suit as set forth in their bill of complaint.

Fourth: The bill of complaint does not show that the complainants, or either of them, have or has any right, title or interest to or in the subject-matter of this suit giving them, or either of them, a right to maintain this suit.

Fifth: The bill of complaint shows that the devise and bequest made by the testator mentioned in the bill of complaint of the rest and residue of his estate for the benefit of the West Florida Seminary (the seminary of learning located west of the Suwannee River under and within the meaning of the laws of Florida providing for the location of one Seminary east and the other west of the Suwannee River) was a good and valid public charitable devise and does not show that the same has been terminated or rendered void and of no effect by Chapter 5384 of the laws of Florida, approved June 5, 1905, or otherwise.

Sixth: The bill of complaint shows that it was the intention of the testator, James D. Westcott, in and by his last will and testament to promote and advance the cause of education in Tallahassee, Florida, by the application of the fund devised and bequeathed by him to the said West Florida Seminary to the benefit of students of Leon County, and does not show that such devise and bequest has failed or been defeated by any act of the Legislature of the State of Florida or otherwise."

The other defendants filed the following demurrer:

"1st. The said bill does not contain any matters of equity, whereon this court can ground any decree or give

to the complainants any relief against these defendants, or either of them.

2nd. The complainants have not shown in and by their bill of complaint that they or either of them, has or have any interest in the subject matter of the suit.

3rd. The bill of complaint does not show that the complainants, or either of them have or has any right or interest to or in the subject-matter of this suit, as gives them, or either of them, a right to maintain a suit concerning it.

4th. The bill of complaint shows that the devise and bequest of James D. Westcott, deceased, of the rest of his estate for the benefit of the West Florida Seminary was a good and valid public charitable devise and bequest, and was not defeated by Chapter 5384, Laws of Florida 1905.

5th. The bill of complaint shows that it was the intention of the testator, James D. Westcott, in and by his last will and testament to promote and advance the cause of education in Tallahassee, Florida, by the application of the fund devised and bequeathed by him to the West Florida Seminary, to the benefit of students of Leon County, and that such devise and bequest has not failed or been defeated by any act of the legislature, or otherwise."

Both demurrers were overruled in one order, and on appeals therefrom the order is assigned and argued as error.

*Raney & Oven* and *Park Trammell*, for Appellants;

*Cooper & Cooper*, for Appellees.

Cockrell, J. (*after stating the facts*)—This case is not without difficulty, and depends upon the proper solution

of two problems, which may be stated thus: Did the Legislature of 1905, in declaring "abolished" the "West Florida Seminary now known as the Florida State College, located at Tallahassee, Chapter 5384 Laws of Florida, *ipso facto* vest in the Westcott heirs the title to the residuary estate, so that the immediate re-establishment under that act of the same institution, would not prevent the lapse; and, secondly, if that be not its effect, are the changes in the existing college so material as that a court of equity should declare the object of the testator's bounty has failed.

First let us make a brief reference to the will itself. Ten thousand dollars are given for the construction and maintenance of a monument over the graves of the testator and his parents, one thousand dollars to Mrs. Archer, and three thousand dollars to his maiden aunt, who we learn from the allegations of the bill was his only very near relative. The rest of the estate, he desired, to be held in trust for the benefit of "The West Florida Seminary, the institution located at Tallahassee with which Col. Rivers is connected." Authority is given his executor, or should he not qualify, to the "officers controlling the institution" to change the investment of funds in their discretion; the interest only to be used. We may further add that the income from the estate had been so used for nearly twenty years by his executor under the will prior to 1905.

The naked title has since Judge Westcott's death, been in his heirs, subject to this burden and the right of the trustee to change the investment, which right carried with it the power to make the necessary legal transfers, and we are not facing a hiatus in the legal title.

While the various State institutions of higher learning were by that act abolished, State *ex rel.* Moodie v. Bryan;

50 Fla. 293, 39 South. Rep. 929, provisions were made for
the immediate re-establishment of two schools to be under
a new set of public trustees, named the Board of Control,
and the trustees of the "abolished" institutions were re-
quired to convey the properties theretofore under their
care and management to the State Board of Education.

Section 2 of that act reads: "That all and singular all
the lands, tenements and hereditaments, estate and prop-
erty, real, personal and mixed, including all bonds, funds,
moneys and investments, and the rents, issues and profits
thereof, had, held, or possessed by the said institutions
named in Section 1 of this Act, or any of them, or to
which said institutions or any of them might or could
have, claim, or be in any way or manner entitled to either
in esse or in futuro and from any source whatsoever, be
and the same are hereby declared forfeit and to revert to
the State of Florida, and upon the passage and approval
of this act, to vest absolutely in the State Board of Educa-
tion in fee simple absolute, in trust, nevertheless, for the
uses and purposes hereafter provided for herein."

The Act became a law on June 5, 1905, at the end of the
school year and provision was made whereby the two
Boards were to act promptly in selecting the locations for
the two new institutions, and one of them, designated as
the Florida Female College, but now officially called the
Florida State College for Women, was promptly located
at Tallahassee, at the site formerly occupied by the Flor-
ida State College, so that there has been no break in the
actual workings of the school as an institution for higher
education, opening its regular session in the succeeding
autumn. Equity looks at the substance, rather than the
strict letter and we fail to find such hiatus or break in the
continuity of the institution as to cause us to declare a

forfeiture, and we answer the first question propounded by us, in the negative.

Had the heirs interposed between June 5, 1905, and the actual location of the proposed new college at Tallahassee, there are respectable authorities holding that a court of equity would stay its hand a reasonable time, to await the outcome of the pending action; it is certainly too late after that action has been promptly taken to come in and in the face of the well known public facts known by all to exist, to suggest that the institution does not continue to exist, though under a changed name and other changes presently to be considered.

Up to this point, we discover nothing other than a change in trusteeship, a change in name, and a short interval of time during which the object of the bounty might have ceased to exist, had certain Boards so willed. That interval had safely passed, and upon the filing of the bill of complaint we find at the site of the school, erroneously called the "West Florida Seminary," by Judge Westcott in his will, a flourishing institution for higher education, most liberally supported by the State, called the "Florida State College for Women," which has been in continuous operation since 1905, and upon which the State has expended several hundred thousand dollars.

There have been many changes in the institution in the quarter century since Judge Westcott made his will. We may add parenthetically that all institutions, which have survived this rapidly progressive age, have of necessity made many changes, in order to survive. Mere change of name, unless some peculiar affection for the name is indicated by the donor, means nothing, while location is important. Institutions controlled by the State are of necessity subject to change in State policy, and of this, those endowing such institutions must be held to have

knowledge, and if they would offer a check upon this change of policy, their will upon the matter should be made known, if not directly, at least by clear inference.

The main change is in the fact that at the time Judge Westcott made his will, he died soon after, the Seminary was co-educational, while now it is confined to girls who have passed certain grades of the common schools; the other changes are incidental to this change and may pass unnoticed.

While the bill alleges that the testator was himself an alumnus of this Seminary, the will is silent as to that fact and the will does not propose an aid to the boys of Leon county, but to "students" of that county. Co-education among college students was then, perhaps more than now in its experimental state, though common enough in the grammar schools, and surely an alumnus with pride, as well as love for his alma mater, must have looked forward to the time when it would put off its swaddling clothes and become a seminary or college, a State institution in fact as well as in name, and he is held to the foresight that when such time came, the Legislature might change its mind and separate the sexes. And so it may be, he used the happy word "student" as embracing male and female, both or either.

Under the letter of the will, then the bounty can be applied to the "Institution located at Tallahassee," and "at least one-half of this interest expended for the benefits of students of Leon county under the direction of the managing officers of the institution."

Perhaps the above reasoning would savor too much of special pleading and be unsupportable without the assistance of the doctrine of cy press as now almost universally recognized by the courts of this country; not as, at one time, enforced in England, as a special prerogative of the

High Chancellor, under the Sign Manual of the King, as *parens patriae*, but under or independent of the Statute of 43 Elizabeth, Chapter 4, as an ordinary equitable doctrine of a liberal construction in favor of public charitable bequests, especially where the bequest has once vested.

It is apparent that the testator desired his estate to go not to his remote heirs, he had none nearer than the maiden aunt, whom he specifically remembered, but to this public educational institute at his home town, and for assistance through that institute to the students from his home county of Leon. The main objects of his bounty can be still made effective, and while it may be doubted, whether the courts would be warranted in the construction, if the object were private and not eleemosynary, we think we are well within the decided cases, and are doing no violence to the intention of the testator, in holding that the Florida State College for Women is entitled to receive the income from the residuary estate. See Schouler, Petitioner, 134 Mass. 426; Festorazzi v. St. Joseph's Catholic Church of Mobile, 104 Ala. 327, 18 South. Rep. 394, 25 L. R. A. 360; Hoeffer v. Clogan, 171 Ill. 462, 49 N. E. Rep. 527; Moran v. Moran, 104 Iowa 216, 73 N. W. Rep. 617; Harrington v. Pier, 105 Wis. 485, 82 N. W. Rep. 345.

The demurrer to the bill should have been sustained and the orders appealed from are, therefore, reversed.

Taylor, Hocker and Parkhill, J. J., concur;

Whitfield, C. J., dissenting.

The bequest in this case is as follows: "The rest of my estate, I wish held in trust for the benefit of the West Florida Seminary, the institution located at Tallahassee,

with which Col. Rivers is connected. I wish only the interest upon the principal used yearly, and in this and in all other matters my executor is hereby given authority to change investments of funds in his discretion. If, however, he should not qualify, then the investment may be changed by the officers controlling the institution. I wish at least one-half of this interest expended for the benefit of students of Leon County under the direction of the managing officers of the institution. I wish none of it used for building or improvements of grounds."

The court holds that the legal title to the property is in the testator's heirs subject to the bequest and to the right to change the investments; and that The Florida State College for Women now established at the place where The West Florida Seminary was located before it was abolished and discontinued, is the beneficiary intended by the testator in making the bequest.

Charitable bequests are favored, and if practicable they should be so applied as to effectuate the testator's purpose whether the exact limitations of the bequests are expressed in definite words or not. But the heirs of the testator can lawfully be deprived of the beneficial use of property bequeathed to charity, only when the designated beneficiaries can legally and in fact receive the bequest as intended by the testator. Where there is a bequest to a specific charity, and no general charitable purpose appears, the application of *cy pres* or other rules of construction that operate to give the bequest to a purpose or to beneficiaries not clearly intended by the testator, encroaches upon the rights of the testator's heirs to inherit the property when the particularly designated beneficiaries cannot receive the bequest. While a charitable bequest should be so construed as to give effect to the ascertained intent of the testator in making the bequest, yet

when circumstances affecting the identity of the bene-
ficiaries have changed, and there is real doubt as to
whether those claiming to be the beneficiaries are in fact
those intended by the testator, the certain provisions of
the statute of descents should be applied rather than to
resort to *cy pres* or other uncertain rules of construction
that give the bequest to beneficiaries that may or may
not be those intended by the testator. Especially should
this be the rule where no general charitable intent is dis-
closed, and the bequest is specifically made to a special
charitable object, and the gift is of only the annual in-
come from property, the title to which descends to the
testator's heirs. The province of the court is to ascertain
and enforce the intent of the testator in making a be-
quest, and not to conjecture as to what would be the in-
tent of the testator under changed conditions, for that
would in effect be to make a bequest for the testator. In
ascertaining the intent of the testator, the circumstances
that prompted a bequest and the purpose designed to be
accomplished, may be considered where the language
used does not precisely and fully define the exact limita-
tions of the bequest.

The will discloses no general charitable purpose—no
intent to aid public education generally at Tallahassee or
elsewhere—and the bequest was specifically and expressly
made "for the benefit of The West Florida Seminary," a
State institution of learning and its students. It is obvi-
ous that the testator contemplated a continuance of the
educational facilities as then afforded to all the classes
of persons such as were then students at the particularly
designated institution, and that he made the bequest of
the annual income from the property to aid that continu-
ance. While the testator knew that the character of the
institution could be changed by law, he also knew that if

by such a change it is made impracticable for his intended beneficiaries to receive the bequest as he designed, it would relieve the property of the trust, and the beneficial interest would revert or result to his heirs, who, as the court holds, succeeded to the legal title to the property at the death of the testator. The power of the legislature to abolish or to change the character of the institution specifically designated as the beneficiary of the bequest, does not, as against the heirs, authorize the use of the property for a different institution or for a purpose or for beneficiaries not clearly intended by the testator.

The fact that the bequest was for a number of years used for the benefit of the institution as designated by the testator, does not prevent the beneficial use of the property from merging into the legal title of the heirs, when because of changed circumstances the beneficiaries intended by the testator cannot now receive the bequest. The will shows no intent to exclude the testator's heirs except "for the benefit of The West Florida Seminary." And such an intent if shown could not avail where the property is not completely disposed of to others. See McDougald v. Gilchrist, 20 Fla. 573, text 577. The testator allowed the legal title to the property to descend to his heirs subject only to the specific bequest, so there could have been no intent to exclude the heirs except for the purposes of the particularly designated trust impressed upon the property in making the specific bequest.

"The institution located at Tallahassee" referred to as the beneficiary of the bequest was by the terms of the will specifically designated and declared to be "The West Florida Seminary," an institution then existing under the law, and since then referred to by that name in statutes of the State making appropriations for its support and

maintenance. The court cannot substitute another institution of a different character for the one designated.

Where the bequest is made in plain terms for a specific beneficiary, and there has been a change of circumstances from those existing at the date of the execution of the will and the death of the testator, no other beneficiary can be substituted upon what may be presumed would have been the wish of the testator under such changed circumstances. "Upon the happening of a state of facts not contemplated and provided for by the testator, courts are not authorized to imagine what would have been the desire of the testator under such circumstances and to enforce such presumed desire as a part of the will." Jenkins v. Merritt, 17 Fla. 304.

A trust arising under a will is an express trust to be controlled and interpreted under the terms of the will. Gale v. Harby, 20 Fla. 171.

The bequest is of the annual "interest upon the principal" "for the benefit of The West Florida Seminary, the institution located at Tallahassee," "at least one-half of this interest" is directed to be "expended for the benefit of students of Leon County under the direction of the managing officers of the institution." These definite express limitations taken with the other provisions clearly indicate an intention that the bequest shall be used only to aid "The West Florida Seminary" in continuing the instruction it afforded when the bequest was made; and it is conceded that such instruction was by law and in fact then given to both male and female students. When the terms of the bequest are considered in connection with the admissions of the demurrer that the testator was educated at "The West Florida Seminary, the institution located at Tallahassee," and that the testator "having such connection and association therewith did make said

provisions, devises and bequests in his will in trust for that institution alone as specifically named and designated in his said will," the inevitable conclusion seems to be that the testator intended to aid only the particularly named institution in continuing to give appropriate instruction to both male and female students as was being done when the testator was a student there and when the bequest was made.

"The West Florida Seminary" has been abolished in name and in law, "and has ceased to operate and has been wholly discontinued and so remains," the educational facilities now afforded by a different institution at the same place are appropriate only to girl students in the higher grades, and are materially different in scope and purpose from that afforded by the Seminary as shown by the statutes; and the classes of persons now received as students there under the statute are only females who have attained the tenth grade. Under these changed circumstances the purpose of the testator cannot now be effectuated as intended, the beneficiaries intended by the testator cannot now receive the bequest as designed, and the courts cannot substitute beneficiaries that the testator may or may not have favored had he contemplated the changed circumstances. This being so it seems that the intention of the testator as shown by the will no longer operates to exclude the heirs from the beneficial use of the property, the legal title to which they have had since the testator's death.

SHACKLEFORD, J., concurs in the foregoing dissent.