PERCY STARR et al., Appellants, v. MORNINGSIDE COLLEGE et al., Appellees.

WILLS: Construction—Bequest to College. Where a codicil to a will provided that a bequest for a denominational college should be made a part of the endowment fund, *held* that the bequest was not to be considered as a conditional one that the college should remain located at a certain place, but rather that it was the intention of the testator to further the cause of education, and that the bequest would not be defeated by the merger or amalgamation of that college with another college of the same denomination at a different point.

*Appeal from Woodbury District Court.*—GEORGE JEPSON, Judge.

JULY 2, 1919.

ACTION in equity, to restrain defendants from using a

bequest of $2,000 made by one S. B. Starr, deceased, and asking that the bequest be decreed to be a conditional bequest, and asking that plaintiffs, as heirs of said S. B. Starr, be decreed to be the owners thereof, and for judgment and general equitable relief. The defendants' demurrer to the petition was sustained, and the plaintiffs appeal. The facts are more fully stated in the opinion.—*Affirmed.*

*H. J. Fitzgerald,* and *Sears, Snyder & Boughn,* for appellants.

*H. L. Lockwood, E. M. Corbett,* and *Edwin J. Stason,* for appellees.

PRESTON, J.—There are 70 pages of the abstract taken up with the pleadings and exhibits, which we will attempt to condense, and state only so much thereof as may seem to be necessary. It appears—and we state the facts as to the nature of the action in the language of appellants—that plaintiffs are the grandchildren and sole heirs at law and sole residuary legatees, under the will of deceased, and that the action is against Morningside College, of Sioux City, Iowa, its officers, board of trustees, general endowment committee, and the Northwestern German Endowment Committee, they being the trustees and custodians of the endowment fund of the Charles City College; that said bequest was paid into the endowment fund of the Charles City College, of Charles City, Iowa, by the executor, on June 24, 1907, and became a part of said endowment fund until the same was transferred by its trustees, and a commission thereof, to the endowment fund of the Morningside College, under the arrangement hereinafter more fully shown. Said transfer became complete at and prior to the 13th day of June, 1915, and said $2,000 is now being used as part of the endowment fund of said Morningside College. Plaintiffs' claim is that the bequest was conditional, and became divested by the transfer to Morningside Col-

lege. By his second codicil to his will, which codicil was executed August 9, 1899, testator provided as follows:

"I give and bequeath unto Charles City College, located at Charles City, Floyd County, Iowa, the sum of two thousand ($2,000.00) dollars."

On January 11, 1906, testator executed a further codicil, which is, in part, as follows:

"I, S. B. Starr, of Floyd County, state of Iowa, and being of sound, disposing mind and memory and desiring some changes made in my will dated June 1st 1897, and codicils made since, do hereby make and declare this my ninth codicil to my said will.

"1st Item. Whereas in the second codicil to my will I willed and bequeathed to the Charles City College of Charles City, Iowa, the sum of two thousand dollars without making any direction as to the disposition of said bequest, I do now hereby will and direct that said sum of two thousand dollars be added to and made a part of the endowment fund of the said Charles City College located at Charles City, Iowa, and that the same be in no manner used or disposed of by them."

The controversy in this case arises over the first item of the ninth codicil, just set out. It is alleged that, for more than 20 years prior to June 30, 1915, the Charles City College, of Charles City, Iowa, had been a Charles City institution, established and created by the financial aid of citizens of Charles City, Iowa, and there maintained chiefly by the financial support of the citizens thereof; and the endowment fund connected therewith, to secure the maintenance of said college at Charles City, Iowa, was known as the endowment fund of Charles City College, of Charles City, Iowa, and further:

"That the decedent, S. B. Starr, was a continuous resident of Charles City, Iowa, for about 50 years prior to his death on the 29th day of April, 1906; that he became and

was the owner and holder of large financial interests in said city, and the owner and holder of large real estate and personal property in said city, and was prominently identified with the commercial interests, educational affairs, and all public institutions, their growth and development, as a part of and contributing to the development of the said city of Charles City, Iowa; that, for a period of 45 years prior to his death, he was a widower, and devoted all of his time not claimed by his professional duties, all of which ceased during the year of 1887, to the public institutions and to the promotion of the commercial, educational, and charitable institutions of the said city of Charles City, Iowa, and became and was a devoted patron of his home city and all of its institutions; that the purpose and spirit of the last 45 years of decedent's life were the promotion and welfare of the public interests, charitable and educational institutions, of his home city of Charles City, Iowa, and to carry out this purpose and spirit in his last will and testament and the codicils thereto which were attached to this petition and in the ninth codicil thereof, he restricted the bequest of the sum of $2,000 to the endowment of the said college at Charles City, Iowa, to the institution known as such, and located at Charles City, Iowa, and provided further that the said bequest should in no other manner be used or disposed of by them."

The amended articles of incorporation of Morningside College, dated after said college succeeded the Charles City College, or, as appellees put it, after the Charles City College was amalgamated with Morningside College, provide, among other things, that its principal place of business shall be Sioux City, Woodbury County, Iowa; that its name shall be Morningside College; that it shall have a corporate seal, upon the margin of which shall be inscribed the words: "Morningside College, Sioux City, Iowa, Corporate Seal,"

and across the center thereof, "C. W. Payne, Patron." And further:

"These articles shall be in full force and effect when adopted by the boards of trustees of Morningside College and of Charles City College, and on and after the date that these articles are filed for record in the office of the recorder of Woodbury County, in Sioux City, Iowa, to wit: on the 29th day of January, 1916."

Some time prior to June, 1914, commissioners of Morningside College and of Charles City College entered into a preliminary agreement, which is called an amalgamation of the two institutions, which agreement provides, among other things:

"Whereas, the trustees of Charles City College have agreed to enter into an amalgamation with the trustees of Morningside College by which the two institutions become vitally and originally one; * * * the joint commission hereby agrees and recommends to the respective boards of trustees the following:

"(1) It is agreed that the work now being carried on by the separate institutions * * shall be carried on jointly at Morningside College, beginning with the opening of the next college year, September, 1914.

"(2) The institutions shall be one and in no way separate, and the united institution shall be administered by a board of 40 trustees, but it shall be within the power of the corporation which shall be created by the amended articles of incorporation to increase or diminish the number. * * *

"The trustees of Charles City College shall proceed at once to dispose of their realty and other property. They shall pay all indebtedness so that Morningside College shall in no way become responsible for the debts of Charles City College. * * *

"The net proceeds of the Charles City holdings, wheth-

er derived from the sale of property, the transfer of endowment, or other sources, shall be held perpetually in a separate fund to be known as the 'Northwest German Conference Endowment Fund of Morningside College.' The principal shall be securely invested and the proceeds alone used for the general maintenance fund of Morningside College. The trustees elected by and representing the Northwest German Conference in the board of trustees of Morningside College shall be a special committee to serve as custodians of the 'Northwest German Conference Endowment Fund.'

"On the 29th day of January, 1916, 'Amended and Substituted Articles of Incorporation of Morningside College of Sioux City, Iowa, further providing for the merger of Charles City College with Morningside College' were adopted, with the following preamble:

"Whereas, at a meeting of the board of trustees of Charles City College, a corporation located at Charles City, Iowa, and at a meeting of the board of trustees of Morningside College, a corporation located at Sioux City, Iowa, * * * it was unanimously decided that it was for the best interests of Methodism that said colleges should be merged, and that Morningside (College) should be the legal successor to the two colleges first above mentioned, and perpetually entitled to all the rights and privileges of said colleges, or either of them, as one institution, and

"Whereas, it was resolved * * * that said new corporation is and shall be the legal successor to the corporations known as Charles City College and Morningside College as heretofore known, and, as such, shall be the recipient of all legacies, donations and gifts heretofore and hereafter made to either of said colleges. * * *

"Article VIII. This corporation shall be under the control and supervision of the Northwest Iowa Conference of the Methodist Episcopal Church, the Northwest German

Conference of the Methodist Episcopal Church, and such other conferences of the Methodist Episcopal Church as may become patronizing conferences. * * *

"Article XVI. The endowment funds of this corporation shall be in two divisions, the one to be known as the "General Endowment Fund' and the other as the 'Northwest German Conference Endowment Fund.' * * * The Northwest German Conference Endowment Fund shall be in perpetual charge and control of the trustees of the college elected by the Northwest German Conference, and they shall have full charge of all matters relating to the management of said fund, and the net proceeds resulting from the sale of the property, from endowments or from other sources, of the said Charles City College as heretofore known, or any new future gifts, legacies or bequests heretofore or hereafter made by the German constituency, shall be used by the board of trustees for the expenses of the college."

It should have been said that the agreement between the two institutions, before set out, further provides:

"Inasmuch as it is the purpose to make a mutually satisfactory arrangement by transferring to the faculty of Morningside College, certain members of the present faculty of Charles City College, we therefore recommend that the following be incorporated as a part of this agreement: * * *

"It is agreed that the present president of Charles City College, Dr. W. C. Hilmer, shall be the professor of German Literature and the vice-president of Morningside College under this new arrangement."

The agreement also provided for other professors.

It is alleged in the petition that, since about June 30, 1915, the said Charles City College has ceased to exist as a Charles City institution, and the natural proceeds of the college property, including the library and endowment fund,

have been transferred to Morningside College, because the trustees have carried out the provisions of the agreement and the articles of incorporation.

1.   Counsel seem not to differ as to the principles of construction as applied to wills, and for determining the intention of the testator, and they concede that the intention which controls is that which is manifest, either expressly or by necessary implication from its language, and that, under certain circumstances, it is proper to take into consideration the situation of the testator and the circumstances surrounding him at the time it was executed.   It may be well to notice briefly some of the appellees' points first.   They contend, first, that the provision of the will now under consideration was an absolute gift of $2,000 to the Charles City College, and that it was not a trust, so as to give a court of equity authority to direct its administration. But they say that, even if the trust was created, it was a charitable trust, and being such, the heirs or residuary legatees would not be entitled to the fund, even if, as claimed by appellants, the trust were not being literally complied with, and that equity will administer the trust in accordance with the cy pres doctrine; and further, that the heirs and residuary legatees are not entitled to maintain this action, for the reason that the testator failed to provide for a reversion of the fund to them in the event of a failure of the purpose for which it was donated.

As to the first point, undoubtedly the provision in the second codicil would be an absolute gift, but testator had some purpose in executing the ninth codicil.   One, perhaps, was to direct that the bequest be made a part of the endowment fund, the intention being that no part of the principal should be used, but that it should be a permanent fund. 15 Cyc. 1045.   It is, in a sense, a trust.   39 Cyc. 17, 21. Whether it is strictly and technically a trust, we shall not discuss, preferring to place our decision upon another

ground. We have no doubt that testator intended the income from the endowment to be used for a certain purpose. Furthermore, some of the cases cited by appellees are to the effect that, under certain provisions of the cases cited, the testator did not create a trust, and appellees argue, therefore, that it was a gift. Others of appellees' cases, which hold that there was an absolute gift, are where the language is broader, we think, than the language in the instant case. To illustrate, in *Lane v. Eaton,* 69 Minn. 141, 146, the provision was:

"I give, devise, and bequeath * * * absolutely, to be used by said church * * *, in aiding the cause of home and foreign missions, equally."

The court said that a part of the general purposes for which this church was organized is missionary work, and funds given to it to be used in that work are not given in trust, in the technical sense of the word. And so it was in the case therein cited, where a bequest was for the support of charity patients in a hospital. *Doan v. Vestry,* 64 Atl. 314; *Fosdick v. Town of Hempstead,* 125 N. Y. 581; *Bird v. Merklee,* 144 N. Y. 544 (27 L. R. A. 423); and other cases cited by appellees, are of the same general tenor. Without extended discussion of the proposition, we are inclined to the view that an absolute gift was not intended, nor does it seem necessary or advisable to discuss the question more in detail as to whether a trust is created, and whether the doctrine of cy pres applies, or to determine whether plaintiffs may maintain the action, because the testator failed to provide for a reversion of the fund to them, in the event of a failure of the purpose of the donation. We prefer to base our determination of the case on the proposition that the gift was not a conditional one, because Charles City College was located at Charles City, but rather, that the intention of testator was to further the cause of education and religion, and that his intention and bequest may not be

defeated by the mere fact that his purposes are to be carried out by the successors of the Charles City College, or the institution with which it was merged or amalgamated. The principal fund is intact, and, under the agreement and the amended articles of incorporation of Morningside College, the purposes of the testator are being carried out, and, so far as it appears, will be.

Appellants contend that the provisions of Codicil No. 9, with the allegations of the petition as to the location of the Charles City College, made it a conditional bequest. They say that the fact that deceased was a resident of Charles City, and the owner of considerable property therein, and was identified with its commercial interests, educational affairs, and the like, shows that it was his intention to make the donation to Charles City College because it was a local concern; and further, that this showed that he had a particular object of charity in mind, and not a general purpose of charity; and that, when the particular object fails, the bequest will not be administered cy pres, but it will fail altogether. If it was the intention of deceased to make this donation for the benefit of the town, there might be force in appellants' claim. Of course, the bequest to the college in the form of an endowment for educational and religious purposes would indirectly benefit the town and community, so long as the college remained there. But suppose the Charles City College itself should have an opportunity to secure larger endowments and other advantages for greater usefulness by removing to another city, and continue the same objects and purposes of its organization and existence. Could it be claimed that this fund should revert, and testator's purpose to further the interests of education be defeated? We think not. Nor is this materially different where there is a successor or a merger with an institution whose general plan of endeavor is the same. Testator could have made it a condition of his bequest that

the college should remain at Charles City, or, if it removed therefrom, or was merged in any other institution, the fund should revert. This he did not do. The fact that he provided that the fund should not be used for any other purpose than an endowment does not have this effect. That testator may have supposed that the college would remain at Charles City, because it was located there at the time the codicil was executed, will not operate to defeat the bequest, in the absence of such a condition.

It is argued by appellants that the trustees or officers of Charles City College betrayed their trust, and that the Charles City College has been annihilated. But fraud will not be presumed, and there is nothing to indicate that such officers were not acting in good faith and using their best judgment in the merger of this institution with Morningside College. We are not impressed with appellants' argument that the purpose and intention of testator was as they contend, but think, as we have already said, that he intended to make the bequest in the interest of education. There is no allegation that the principal fund has been, or will be, diverted and used for any other purpose than that contemplated by testator. The agreement entered into between the officers of Charles City College and Morningside College, and the new or amended articles of incorporation, all of which have been heretofore set out, show that the endowment has been and will be used by Morningside College, in the same general plan of endeavor contemplated by Charles City College. In some parts of the agreement and new articles, Morningside College is referred to as the successor of Charles City College. Other parts refer to it as a merger or amalgamation. Article XVI of the new incorporation provides that the endowment funds shall be in two divisions, one of which shall have charge of and control of the proceeds from the sale of property, and the endowments of Charles City College. The case of *Central*

*University of Kentucky v. Walters' Exrs.*, 122 Ky. 65 (90 S. W. 1066), seems to be in point. The facts in that case are quite similar to those in the instant case, except that, in that case, it was sought to cancel a note given to one institution, and a new corporation was thereafter formed. We shall not review the case at length. Referring to the fact that, while the maker of the note might have conditioned her promise so as to provide that the college seat should be at Richland, she did not, the court said:

"There was no limitation upon the power of the payee to change the location of its school or schools, or to change the manner of their government or the adoption of particular means of effectuating the general purpose for which the institution was founded. * * * Their subscriptions to this college, in the absence of some limitation in the agreement, must be conclusively deemed to have been in accord with the general purpose of the educational movement then undertaken by the body of the church, and necessarily subject to the power of the governing constituency of the institution to conform its course, and adopt such means to the accomplishment of its great purpose, as are not inconsistent with its object, or with the charter granted by the state. So, when the governing body and all the constituents of the corporation have decided to change the location of the university to include a broader field of work, to add new forces, and bring to its aid additional endowment, all tending to the same end contemplated in its establishment, the enterprise is not abandoned, but is continued."

It is our conclusion that the trial court properly sustained the demurrer, and the judgment is, therefore,—*Affirmed.*

WEAVER, EVANS, and SALINGER, JJ., concur.