IN RE ESTATE OF O. J. MOORE.

No. 40428.

OCTOBER 21, 1930.

REHEARING DENIED JANUARY 16, 1931.

*Hays, Baron & Mathews, W. H. Steuteville,* and *Ritchie, Chase, Canaday & Swenson,* for appellants.

*Shull & Stilwill,* for appellees.

GRIMM, J.—O. J. Moore died testate on the 30th day of May, 1928, in Sioux City, Woodbury County, Iowa. A document purporting to be his last will and testament was filed for probate on the 8th day of June, 1928, in Woodbury County, Iowa. Objections were filed by Joseph C. Moore, Oliver T. Moore, and Lucille Moore Flinn, children of the said O. J. Moore. Afterwards, an agreement was entered into whereby the will was admitted to probate on the 10th day of December, 1928, and on the same day James W. Moore, a son, was duly appointed executor. On the 19th day of February, 1929, said executor filed in probate a document entitled ''Application of Executor for Authority to Execute Deed.'' This proceeding was brought under the provisions of Section 12061 of the Code of 1927, pertaining to conveyances by executors or administrators when the deceased was under obligation to so convey, the latter clause of which said paragraph is as follows:

''And such conveyances may be authorized upon the petition of the executor or administrator.''

It is alleged in said petition, among other things, that the Shenkberg-Moore Realty Company is an Iowa corporation, with its principal place of business in Sioux City, Woodbury County, Iowa; that, on August 2, 1919, the said Shenkberg-Moore Realty Company (which for convenience and brevity will be called the Realty Company), and one M. L. Flinn purchased from one Anna M. Anderson the following described property, to wit: Lot 3 in Block 40, Middle Sioux City, Woodbury County, Iowa, the said Realty Company and the said Flinn each purchasing a one-half interest in said property, the Realty Company paying for its share the sum of $5,000; that a deed to said property was executed by Anna M. Anderson, transferring the title to O. J. Moore and M. L. Flinn; that the said Moore held the legal title

to said one half thereof, solely for the benefit of the said Realty Company, which company was, in truth and in fact, the real and actual owner of the said one-half interest in said real estate, the said Moore having no interest in said property, except to hold the legal title for the Realty Company, the purchaser; and that the said Moore continued to hold said legal title up to the time of his death.

It is further alleged, in substance, that, on November 25, 1921, the said Moore was the owner of the following described real estate in Sioux City, Woodbury County, Iowa: The west 75 feet of the south 50 feet of Lot 2, Block 10, Higman's Addition to Sioux City, Woodbury County, Iowa, and a one-third interest in Lots 1 and 2, Block 40, Middle Sioux City, Woodbury County, Iowa, which property, for brevity, will hereinafter be designated as the "Enright" property. It is alleged that, about November 25, 1921, the said Moore sold the said property to the Realty Company for the sum of $30,000 cash; that the said Moore executed and delivered a deed for said real estate and delivered the same to the Realty Company; and that thereupon, the Realty Company immediately entered into possession of the said real estate, and it has been in the actual, open, and exclusive possession thereof since that time. It is alleged that the said deed covering the Enright property was never recorded, and has been lost; that the said Moore has never had any interest in said Anderson property since the execution of the deed to him; and that he has had no interest in the Enright property since the execution and delivery of said deed to the Realty Company.

On March 1, 1929, Hannah C. Moore, the divorced wife of the deceased, filed her "Resistance to the Application of the Executor." From this resistance it appears that, on or about the 28th day of November, 1921, she was divorced from the deceased, O. J. Moore, and was given judgment against the defendant in the sum of $107,500, as alimony and attorneys' fees; and by supplemental decree, the alimony clause of the decree was canceled, and she was given in lieu thereof $500, payable on the last day of each and every month during her lifetime. The said supplemental decree contained the following language:

"To insure the payment of the sums herein described to be paid by said defendant, this decree and judgment shall and is

hereby declared to be a lien on any and all real property of the defendant, including the homestead where the parties resided prior to the decree of divorce."

There was a denial of the allegations contained in the application for orders, and a prayer that the relief asked for in the executor's application be denied.

On the 10th day of May, Hannah C. Moore filed an amendment to her resistance, alleging, among other things, that she did not at any time sign a deed or deeds or any other instrument conveying title or any right in and to the real estate described in the executor's application. On March 1, 1929, Joseph C. Moore filed his resistance to the application of the executor. On the same day, Lucille M. Flinn filed her resistance. On the 7th day of March, 1929, Hannah Josephine Roark filed a resistance. On the 11th day of May, 1929, the Shenkberg-Moore Realty Company, known herein as the Realty Company, filed a "Verified Appearance and Request." The allegations are similar to those contained in the application of the executor.

It appears that originally the wholesale business of Mr. Moore was handled by a corporation known as the Moore-Shenkberg Grocer Company, and that afterwards, and before the time of the transactions involved herein, the name of this corporation was changed to O. J. Moore Grocer Company. The Realty Company (Shenkberg-Moore Realty Company) is a corporation organized, apparently, solely for the purpose of carrying the real estate belonging to the O. J. Moore Grocer Company, and all the stock in the Realty Company was owned entirely by the Grocer Company.

After the deceased was divorced from Hannah C. Moore, he married Genevieve Moore. The beneficiaries under his will were Genevieve Moore, aged 28, wife; Genevieve Moore, aged 3, daughter (by last marriage); James W. Moore, aged 26, son; Mary Moore Quall, aged 35, daughter; Hannah Moore Roark, aged 24, daughter. By the terms of the will, the household goods, silverware, etc., were divided among his heirs. He gave to his daughter Lucille Moore Flinn and the sons Oliver T. Moore and Joseph C. Moore the sum of $500 each, "and no more." The rest and residue of his property of all kinds was divided as follows: To his wife Genevieve Moore, the son James W. Moore, the wife

Genevieve Moore as trustee for the daughter Genevieve Moore, the son James W. Moore as trustee for the daughter Mary Moore Quall, and James W. Moore as trustee for the daughter Hannah Moore Roark, each an undivided one-fifth interest. James W. Moore was named as executor. There were various other provisions in the will, which are not material to the inquiry before us.

By an agreement of December 8, 1928, signed by Lucille Moore Flinn, Oliver T. Moore, Joseph C. Moore, J. W. Moore, Mary Moore Quall, Genevieve M. Moore, and Hannah Josephine Roark, the will contest was dismissed, and the residue was distributed as follows: To Genevieve Moore, in her own behalf and as guardian of her daughter Genevieve, 9/21st of said residue. Mary Moore Quall, Hannah Moore Roark, and James W. Moore agreed that 2/21st of the residue should be distributed to each of the following named children: Lucille Moore Flinn, Oliver T. Moore, and Joseph C. Moore. The agreement contains many other matters not material to this inquiry.

I. It is the contention and argument of the appellants that the executor who brought this action is claiming a resulting trust in the real estate in suit in favor of the Realty Company,  based on the payment of the purchase price by the Realty Company and the retention of the legal title by O. J. Moore; that the appellee seeks the aid of the court in enforcing such resulting trust, and that such relief is equitable; and that, therefore, this action was tried in equity, and is before us for trial *de novo*. This contention of the appellants', set out somewhat extensively in appellants' argument, is in no wise answered or denied by the appellee.

It seems to be conceded that this trial was held as in equity and determined as in equity, from which it necessarily follows that the cause is here before us for trial *de novo*. The claim having been so made by the appellants without objection on behalf of the appellee, we find it unnecessary to determine any issue in that connection, and consider the cause before us for trial *de novo*.

II. The only witnesses introduced on behalf of the executor were O. O. Quall, the husband of one of the daughters of the deceased,—she being a legatee under the will; one A. E.

 Quisenberry, who, for many years, had been an auditor of both the Grocer Company and the Realty Company; and James W. Moore, the executor.

A very large part of the record in this case consists of cross-examination of these witnesses, for the purpose of discovering a basis for objections to the competency of the witness, based upon Section 11257 of the Code of 1927. If it be assumed, without being decided, that the statute is applicable in this case, and that the witnesses were incompetent to testify to personal transactions with O. J. Moore, nevertheless, a careful examination of the entire record brings us to the conclusion that the plaintiff has satisfactorily carried the burden of his case, and that the court correctly ruled in his behalf.

It clearly appears that the Realty Company was created for the purpose of holding title to all of the real estate owned by the Grocer Company. During all the time involved in this case up to the time of his death, O. J. Moore was one of the active and more or less dominating factors in both companies. The witness Quall was, from 1917 to 1926, secretary and treasurer of the Realty Company. He was also secretary and treasurer of the Grocer Company. His duties included handling all of the books, papers, and records, having charge of the different properties owned by the two corporations, looking after the payment of taxes on the properties the two corporations owned, and looking after the collections of rents and incomes from these properties. The books and records of those two corporations pertaining to their business were kept under his direction.

The witness identified a certain check, known as "Exhibit B," dated at Sioux City, Iowa, August 2, 1919, for $500, payable to the order of W. E. Russell, and signed "Moore-Shenkberg Grocer Company, O. J. Moore, President," on which check in the lower left-hand corner are the words, "Payment on 5th and Wall St."

Another check was offered, known as "Exhibit A," dated at Sioux City, Iowa, August 25, 1919, payable to the order of Annie M. Anderson, for $4,500, signed by Moore-Shenkberg Grocer Company, O. O. Quall, Secretary.

The witness testified that these checks represented the purchase price of what is known as the Anderson property at the

northwest corner of the intersections of Fifth and Wall Streets, Sioux City, Iowa.

It appears that the check for $500 to Russell was a commission check, payable to Russell, who was the agent of the purchaser. It clearly appears that the purchase price of this Anderson property was furnished by the Grocer Company. The record shows that this property was managed and controlled by the Realty Company from that time on. The rents were collected by its agents and representatives, and taxes were paid by the Realty Company.

The witness Quisenberry, who became an officer of these companies after the death of O. J. Moore, had been the auditor of these two companies for many years. He was familiar with the books and records, and it clearly appears that he knew, in a general way, about the companies' business in the matter of the owning of the real estate.

It is the claim of the executor that, in November, 1921, when the divorce proceedings against Moore were pending, Moore found it necessary to raise a large amount of money to pay to his wife and to the attorneys for his wife, the plaintiff in the divorce action. Moore owned what is known in this record as the "Enright" property, which consists of the west 75 feet of the south 50 feet of Lot 2, at the northeast corner of Sixteenth and Pierce Streets, Sioux City, Iowa; and there was in the same transaction a one-half interest in Lots 1 and 2 of the quarter block at the northwest corner of Fifth and Wall Streets. Generally speaking, Moore sold this property to the Grocer Company, and it, in turn, passed it to the Realty Company, the Realty Company becoming owner. The sale was for $30,000. $22,500 of that money passed immediately to the attorneys for Mrs. Moore in the divorce action.

Certain pages of the books of these two corporations were identified and introduced in evidence. The testimony clearly showed that the entries therein pertaining to these transactions were made in the usual course of business. They were made in such a way as to convincingly show that the properties in controversy were really purchased by and paid for by the Grocer Company, and they were held by the Realty Company in accordance with the plan and custom then in vogue, to wit: that the

Realty Company should hold the title to all real estate belonging to the Grocer Company.

It clearly appears that the real estate in controversy was tendered as a basis for credit at the banks by these corporations; that they were controlled and managed by the officers and agents of the Realty Company, and handled in all respects, for many years, as the property of the Realty Company. The Realty Company paid the taxes, collected the rents, and even litigated claims pertaining thereto. During all this time, O. J. Moore lived in Sioux City, where the property was situated and these transactions took place. He was president of both the Grocer Company and the Realty Company, and was very actively engaged in the affairs of these companies. No reason has been shown why he should permit these companies to handle real estate belonging to him personally, or why he should permit the income from his properties to pass into the corporation. Neither is there any reasonable showing made why he should have the corporation pay the taxes on real estate belonging to him. No hypothesis has been suggested upon which it can reasonably be inferred that Moore was permitting the Realty Company to manage and control his personal property. As was said by this court in *Cunningham v. Cunningham,* 125 Iowa 681:

"It is a familiar rule that the court will not overturn the legal title to property, or charge the holder of such title with an implied or resulting trust, save upon clear and satisfactory testimony. A mere preponderance of the evidence is not sufficient. It must be explicit, decisive, and leave the existence of no essential element to conjecture or to remote and uncertain inference."

See, also, *Hyatt v. First Nat. Bank of Williams,* 193 Iowa 593, and cases cited. We think the burden of this rule has been successfully carried by the plaintiff in this case by satisfactory and competent evidence.

It would serve no good purpose to quote from the record the competent evidence bearing on the subject. Many circumstances other than those herein mentioned appear therein. Suffice it to say, the entire record has been very carefully examined, as have been the resourceful and brilliant arguments of the attorneys for the appellants; and we find that the burden of the plaintiff's

cause has been successfully carried by him, and the ruling of the lower court is sustained. It follows that the cause must be, and is,—*Affirmed*.

MORLING, C. J., and EVANS, FAVILLE, and KINDIG, JJ., concur.