## Scott-Lees Collegiate Institute v. Charles et al.

May 24, 1940.

R. Monroe Fields, Judge.

Harman, Francis & Hobson and J. P. Hobson, Jr., Wilson & Harbison and Samuel M. Wilson for appellant.

Stratton & Stephenson, Roscoe Vanover and W. K. Steele for appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

By the second clause of her will which was admitted to probate by the Probate Court of McLean County, Illinois, on June 4, 1923, Mrs. Julia G. Scott, who had died a resident of that County on April 29, 1923, bequeathed "to the Matthew T. Scott Jr. Academy and Industrial School at Phelps, Pike County, Kentucky, the sum of $10,000, in trust, to be used by said Trustees in establishing four scholarships, two of which are to be known as Lewis Warner Green scholarships for boys and two of which are to be known as Julia Green Scott scholarships for girls." The school referred to had been incorporated under the laws of Kentucky on June 4, 1904, under the name of Matthew T. Scott Collegiate Institute, for the purpose of conducting a collegiate, academic, and primary school at West Liberty in Morgan County, and had previously been the recipient of Mrs. Scott's bounty. The corporation had maintained a school at West Liberty until the year 1910, when, pursuant to amended Articles of Incorporation executed on November 9th of that year, the corporate name was changed to "Matthew T. Scott Jr. Academy & Industrial School," and the location of the school from West Liberty to Phelps. In the preamble to the amended articles it was recited that the re-location of the school was "by order of the synod of Kentucky controlling body, with the consent and on the request of Mrs. Matthew T. Scott, the donor of a fund of $6000.00, the principal asset of the Institution." The synod referred to was the synod of the Presbyterian Church, which, by the terms of the Articles of Incorporation, appointed the trustees of the school. The objects and purposes of the corporation were not changed by the amendment, and in its new location at Phelps, the school was continuously operated until May, 1930. However, by this time because of the establishment of a county grade

and high school at or near Phelps, and other changes in the County educational system, it had become apparent that the school conducted by the corporation was no longer needed at that place and could not advantageously be continued there. Its financial resources had been greatly depleted, and with the advice and by the direction of the Presbyterian Synod of Kentucky, the school at Phelps was discontinued and its real property and equipment conveyed to the Pike County Board of Education. The proceeds derived from the sale of the tangible property were disposed of in the payment of debts, or otherwise accounted for, and the intangible assets, other than the securities in which Mrs. Scott's gift had been invested, were eventually turned over by the appellee, W. W. Charles, the then treasurer of the corporation, to his successor. At or about the time of the discontinuance of the school at Phelps discussions were had among the members of the Synod of Kentucky, having for their object the ascertainment of methods by which a transfer of the remaining intangible assets to Jackson, Kentucky, could be effected, there to be used for the benefit of the Lees Collegiate Institute which had been incorporated in the year 1906 under the auspices of the same synod and was conducting a similar school at that place. The proceeds of Mrs. Scott's gift, which, after the payment of inheritance taxes, amounted to approximately $9,000, had been delivered to and receipted for by Alfred Ericson, the then treasurer of the Matthew T. Scott Jr. Academy & Industrial School, on February 16, 1926, and, as before stated, the appellee, Charles, who had succeeded Ericson as treasurer, retained the securities in which the funds had been invested. His retention of the securities, notwithstanding successive demands made upon him for their delivery to his successor, seems to have been prompted by his belief that the discontinuance of the school at Phelps terminated the Corporation's title thereto. He also testifies that he was advised by Mr. Hugh B. Fleece, who was a member of the Executive Committee on Schools and Colleges of the Synod, and who, in November, 1932, had been employed in his capacity as attorney to arrange for a transfer of the trust fund to the institution at Jackson, that he, Charles, could not safely transfer the securities without the approval of the Court. Mr. Fleece in his deposition stated that he had no recollection of having advised anyone

that it would be hazardous to deliver the trust fund until the Court had directed to whom it should be delivered; but admitted that he had stated to the appellee, Charles, "that since he had declined to make any such delivery that a suit would be necessary," and that Charles should be fully protected. Shortly after his employment Mr. Fleece moved to Washington, D. C., and became deputy general manager of the Home Owners Loan Corporation, and hence, was unable to give the matter of the consolidation prompt attention. Other delays were encountered, but, on April 24, 1934, the Matthew T. Scott Jr. Academy and Industrial School and the Lees Collegiate Institute were consolidated in the manner prescribed in Sections 555 and 556, Kentucky Statutes, into one corporation under the name of Scott-Lees Collegiate Institute. In the Agreement of Consolidation it was recited:

"That said *Academy* and said *College* were both organized and have always continued in connection with and under the control of the Synod of Kentucky of the Presbyterian Church in the United States; that each of said institutions was organized and has been conducted for the same general purpose, namely, the education and training of boys and girls, children and youth, gathered mainly from counties in the Eastern section of Kentucky; and each of said parties hereto owns funds and property, real, personal, and/or mixed, part of said property and funds being held for the general purposes of said institutions, respectively, and other parts thereof being held for specific or defined purposes.

"That it is believed that the best interests of both institutions and of the Synod which controls and sustains them will be conserved and promoted by the consolidation of said institutions under a common charter and in accordance with the terms and conditions herein set forth."

On September 14, 1934, following renewed demands on the appellee, Charles, for the delivery of the securities, the Scott-Lees Collegiate Institute filed a petition in equity against the appellee, Charles, in the Pike Circuit Court alleging the facts on which it based its claim of title to the securities composing the trust estate derived from Mrs. Scott and praying that it be adjudged

entitled to the possession of said securities, and that the accounts of Charles as the former treasurer of the Matthew T. Scott Jr. Academy and Industrial School be audited and settled. On March 20, 1934, Charles, styling himself trustee, had instituted in the same Court a suit against the Pike County Board of Education, the Presbyterian Church of the United States, and the Executor of Mrs. Scott's will, alleging that the Matthew T. Scott Jr. Academy and Industrial School had ceased to function, and calling upon the defendants to assert their title to the Scott bequest. No summons, however, were ever issued against the Church, and no claim to the trust estate was ever asserted by the Pike County Board of Education. Eventually on the motion of Charles and over the objection of the Scott-Lees Collegiate Institute, the two actions were consolidated and the executor of Mrs. Scott's will was allowed to file an intervening petition, although the Court had previously declined to permit the consolidation of the two actions, or the Executor to intervene in the action instituted by the Corporation. A demurrer to the intervening petition was filed and overruled, after which the issues were completed and proof taken by deposition. Without detailing the various steps, it is sufficient to say that on final hearing the Court entered a judgment dismissing the petition of the Scott-Lees Collegiate Institute and directing that the trust estate be delivered to the executor of Mrs. Scott's will. This appeal is from that judgment.

The proof taken in the consolidated actions discloses the facts heretofore enumerated, but did not purport to establish any fact which would indicate that Mrs. Scott had any particular interest in the town of Phelps or would have objected to the re-location of the School at Jackson could she have foreseen the circumstances leading to that event. In 1910, according to the preamble of the amended Articles of Incorporation, she had not only consented to but requested the removal of the school from West Liberty to Phelps, notwithstanding the fact that the school was located at West Liberty when it first became the object of her charity. A wealthy, generous, and evidently devout Christian, her sole object in creating the trust seems to have been to establish scholarships in memory of herself and her family in a school to be conducted under the auspices of the Presbyterian Church for the benefit of Kentucky's

under-privileged children. Moreover, there was filed with the deposition of Mr. Fleece the following letter received by him from the two daughters of Mrs. Scott, who, by the fifteenth clause of her will, were made the residuary legatees of her personal estate:

"Mr. Hugh Fleec
 "Intersouthern Building,
 "Louisville, Kentucky

"My dear Mr. Fleec:

"Owing to the fact that the Presbyterian Synod of Kentucky has decided to withdraw its work at Phelps, Kentucky, we the undersigned, daughters of Mrs. Matthew T. Scott, hereby wish to state that we desire the legacy left by our Mother for scholarships at the Matthew T. Scott Jr. Academy and Industrial School at Phelps, Kentucky, transferred to Lee's College, Jackson, Kentucky.

"Sincerely yours,
 "Julia Scott Vrooman
 "(Mrs. Carl Vrooman)"

"The other immediate heirs, Matthew Scott Bromwell of Lake Forest, Illinois, and Mrs. Sydney Bailey, the wife of Admiral Sydney Bailey of the British Navy, stationed now at Malta, will we are sure concur in this request. We will ask Scott Bromwell to sign this letter, and if necessary will write Mrs. Bailey at Malta also to authorize this transfer.

"Matthew Scott Bromwell
 "Letitia Scott Bromwell
 "(Mrs. Charles Bromwell)"

At the time this letter was written, Mrs. Scott's large estate, to all intents and purposes, had been settled, although the Executor had not been formally discharged; and it is difficult to escape the conclusion that he intervened in this proceeding merely because he had been informed that it was his duty so to do. In the absence of proof that the objects of the trust had become impossible of accomplishment, it is apparent that there was no justification for a decree directing a return of the estate of Mrs. Scott's executor. It is true that the Cy Pres Doctrine has never been adopted in this state "to the extent of supplying a beneficiary or purpose

where these objects are not expressed in the instrument." Gill's Ex'r v. Woman's Club of Louisville, 205 Ky. 731, 266 S. W. 378. But it is also true that where an instrument creating a charitable trust does not provide the conditions on which the trust estate will revert, it must be clearly shown that the trust cannot be performed before a reverter will be decreed. Here, in order to support appellant's right to the trust estate, it is not necessary to resort to the Cy Pres Doctrine, or even to the universally recognized rule that a charitable trust will never be allowed to fail for want of a trustee to administer it. State Bank & Trust Co. v. Patridge, 198 Ky. 403, 248 S. W. 1056. The appellant is but the Matthew T. Scott Jr. Academy and Industrial School under another corporate name, combined, it is true, with another corporate entity, the Lees Collegiate Institute, but possessed of title to the assets of both, and fully authorized by its charter to carry out the objects and purposes of the former. It is wholly immaterial that the purpose of the consolidation was to preserve the trust estate donated by Mrs. Scott, since, when so preserved it was to be used in the attainment of the objectives which inspired its creation. Likewise the delay in combining the two corporations and the suspension of the activities of the Matthew T. Scott Jr. Academy & Industrial School during the interim did not operate to terminate the trust, as charitable trusts are universally favored in law, and mere delay in carrying out their objectives or temporary suspensions will never be allowed to defeat them. Jenkins v. Berry, 119 Ky. 350, 83 S. W. 594, 26 Ky. Law Rep. 1141; Owsley v. Owsley, 77 S. W. 394, 25 Ky. Law Rep. 1194; Corpus Juris, Vol. 65, page 352, Section 125. On what theory, therefore, could a reverter be properly decreed? The instrument creating the trust did not provide for it, the objects of the trust can still be accomplished by the designated trustee, and the residuary legatees under the donor's will who would be entitled to receive the trust estate should a reverter be decreed, are not seeking it. Only the bare assertion that the school should have been continued at Phelps, remains, and, as before pointed out, there is nothing in the language of the bequest or the surrounding circumstances indicating that the maintenance of the school at that particular location was a material factor in the accomplishment of the donor's wishes.

Fully sustaining our views that the conslidation of the Matthew T. Scott Jr. Academy & Industrial School with the Lees Collegiate Institute and the removal of the former school from Phelps to Jackson did not terminate the trust, are the following decisions of this Court: Central University of Kentucky v. Walters' Executors, 122 Ky. 65, 90 S. W. 1066, 28 Ky. Law Rep. 1041; Bryan et al. v. Board of Education of Kentucky Annual Conference of the M. E. Church South, 90 Ky. 322, 13 S. W. 276, 12 Ky. Law Rep. 12; Miller v. Central University, Ky., 112 S. W. 669; Central University of Kentucky v. Cox's Ex'r, 136 Ky. 260, 124 S. W. 299. See also Carr v. Trustees of Lane Seminary, 5 O. O. 272; In re Young Women's Christian Association, 96 N. J. Eq. 568, 126 A. 610.

It may be added that in no event was the Executor entitled to the trust estate since he had never qualified in Kentucky, and hence, was without power to maintain the action by intervening petition or otherwise. Marrett v. Babb's Ex'r, 91 Ky. 88, 15 S. W. 4, 12 Ky. Law Rep. 652; Kentucky Statutes, Sections 3878, 3879.

Other grounds for reversal are relied on by appellant, but, in view of the conclusions previously expressed, it is not necessary to discuss them.

Judgment reversed with directions to dismiss the intervening petition and enter a judgment awarding the trust estate in its entirety to the appellant.