In re Estate of Sylvester C. Williams, deceased; Flave Hamborg, executor-appellant.

In re Guardianship of Cora May Williams, incompetent; Jessie Wilcox, guardian-appellee.

No. 47786.

(Reported in 45 N.W.2d 146)

December 12, 1950.

Lappen & Carlson, of Des Moines, for executor-appellant.

Herbert H. Hauge, of Des Moines, and William F. Morrison, of Iowa City, for guardian-appellee.

GARFIELD, C.J.—This is a controversy in probate between the executor of S. C. Williams, deceased, and the guardian of his widow over ownership of $4620 in currency found in the widow's safe-deposit box soon after 'testator's death. The trial court awarded the money to the guardian and the executor has appealed.

S. C. Williams, age seventy-eight, died November 16, 1948. Appellee, a niece, was appointed guardian of the widow, age eighty-two, on November 19, 1948, upon the latter's application reciting she was of sound mind but infirm and in poor health (see section 670.5, Code, 1946). On August 11, 1949, the ward was found to be of unsound mind and the guardianship changed to an involuntary one over her person and property (see Code section 670.2).

On November 20, 1948, the guardian, her attorney and a trust officer of the Central National Bank in Des Moines opened the widow's safe-deposit box in the bank to examine its contents. They found nine envelopes containing a total of $4620 in currency which is claimed by both the guardian and the husband's executor. The envelopes were not sealed. Several had been torn open, some had been slit open. They were in a bundle tied with a string. Beneath the string was a slip of paper on which was written "Property of S. C. Williams." There is evidence these words were in Williams' handwriting. There is no claim they were written by Mrs. Williams. This writing is the principal basis for the claim of Williams' executor to the money.

Williams and his wife each had a safe-deposit box in the bank. Williams leased his box April 9, 1937. Mrs. Williams leased hers two years later. The agreement under which each box was leased contains a form by which someone other than the lessee may be designated his agent to have access to the box.

This part of the form was not completed or signed in either lease here. The guardian found the key used to open the ward's box in the Williams home in Des Moines. A duplicate key was found on the person of Mrs. Williams who was staying in a "restorium." Only two keys to each box were in existence. The keys to Mr. Williams' box were found with the keys to his automobile.

Records of the bank show Mrs. Williams authorized her husband to enter her box October 27, 1947. Mrs. Williams accompanied her husband to the bank on that occasion but could not see to write. Also that on August 3, 1948, Mrs. Williams signed by mark this paper addressed to the bank: "Will you please allow my husband, S. C. Williams, access to my safe Deposit box until further notice. I am not able physically to come to the Bank to attend to necessary business." The bank records do not show that Williams entered his wife's box after August 3, 1948.

Mr. Williams' box was opened by his executor December 22, 1948. He testifies, "The box was jammed full, full of tax receipts and other receipts and stock transmissions until there was no more room for other papers." The guardian was present when Williams' box was opened. She says, "I wouldn't want to say the contents were packed in but the box was very full."

The bank's records show Williams opened his own box nineteen times between October 3, 1947, and the time of his death in November 1948. July 6, 1948, is the last time he opened his own box before August 3, 1948, one of the dates he opened his wife's box.

Upon the evidence above-summarized the trial court held the presumption of ownership from the widow's possession of the currency had not been overcome and awarded it to her guardian.

Perhaps we could affirm the decision on the ground this is an action in probate tried as at law, not reviewable de novo here, and there is substantial evidence to support the decision. See Roth v. Headlee, 238 Iowa 1340, 1342, 29 N.W.2d 923, 924, and citations.

However, we are not inclined to dispose of the appeal on such ground. Both parties seem to have argued the case as if

it were reviewable de novo here. There is little if any dispute in the facts. Nor may different inferences fairly ·be drawn therefrom. The only room for argument is over the application of the law to undisputed facts. Under similar circumstances we have passed on the correctness of the trial court's decision. See In re Estate of Cornish, 233 Iowa 596, 10 N.W.2d 85; In re Estate of Martens, 226 Iowa 162, 283 N.W. 885. See also In re Will of Hagan, 234 Iowa 1001, 1007, 14 N.W.2d 638, 641, 152 A.L.R. 1296, 1301, and citations.

We think there was no error in awarding the money to the widow's guardian.

■ It is well-settled that possession of property raises a rebuttable presumption of ownership. In re Estate of Cornish, supra, 233 Iowa 596, 599, 10 N.W.2d 85, 87, and citations; 50 C.J., Property, section 65, page 786; 42 Am. Jur., Property, section 41, which says, in effect, the presumption is particularly applicable where the property consists of negotiable instruments or currency.

The notation on the slip, "Property of S. C. Williams", may have been evidence the money did not belong to the widow. See Cornish opinion, supra. However, this notation, under the circumstances here, is insufficient to rebut the presumption of ownership from the widow's possession of the currency.

The facts in the Cornish case seem considerably stronger in favor of the claimants to the currency and bond there than the facts here. There the envelopes found in the decedent's safe-deposit box were sealed and each bore substantially this notation on the outside: "Property of Mrs. Jennie E. Westfall, Kinross, Iowa." Attached to each envelope was a slip on which appeared *in decedent's writing* substantially this: "Merchants National Bank. The attached envelope is the property of Mrs. Jennie E. Westfall, to whom it is addressed. Please deliver the same to her. [Signed] F. R. Cornish." The named bank was executor of Cornish's will. Inside each envelope there was a letter signed by Cornish addressed to the intended donee stating, "The enclosed 5% coupon bond for $1,000, I give to you" or "The enclosed currency, to the amount of $200, I give to you." Yet it was held in the Cornish case the currency and bond belonged to the decedent in whose box they were found.

1294

The executor seeks to avoid the effect of the Cornish decision by saying he does not claim Mrs. Williams made a gift of the currency to her husband. However, it does not aid the executor to disavow one theory upon which he might prevail if the evidence supported such theory.

There is no evidence this currency ever belonged to Mr. Williams unless the writing on the slip constitutes such evidence. Nor is it shown the currency was Mr. Williams' property left in his wife's box for safekeeping. If this were the fact, it would seem, as we observed in the Cornish opinion, some evidence thereof would be available. That Mr. Williams' box was well-filled with receipts and other papers is likewise insufficient to establish his ownership of the currency as against his widow.

Since we find no error in the trial court's decision it is— Affirmed.

All JUSTICES concur.